James E. PALMER, Appellant,

v.

The STATE of Texas, Appellee.

No. B14–85–487–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Sept. 4, 1986.

Stephenie E. Shapiro, Kahn & Maierson, Houston, for appellant.

Jim Mapel, Dist. Atty., Jim Turner, Asst. Dist. Atty., Angleton, for appellee.

Before PAUL PRESSLER, SEARS and CANNON, JJ.

## OPINION

SEARS, Justice.

Appellant was convicted by a jury for the aggravated assault of Texas Department of Corrections (TDC) Guard Billy Ray Neuman. His punishment was assessed at confinement for twenty years and a $10,000.00 fine. We affirm the conviction.

On April 7, 1984, appellant, an inmate of the Darrington Unit of the TDC, was taken out of the dinner line by a guard who told him that he had already eaten once and would not be permitted to do so again. Appellant was taken to Sergeant Neuman, who ordered appellant to return to his cell. An argument ensued, during the course of which appellant struck Neuman. He was subsequently charged with aggravated assault.

In his first ground of error appellant argues that the court committed reversible error during the punishment phase of the trial by allowing the state to introduce evidence of extraneous offenses. At a hearing outside the presence of the jury, the prosecutor asked each of the state's five character witnesses whether they knew appellant's general reputation in the community where he lives for being peaceful and law-abiding. Each witness responded that he knew appellant's reputation and that it was bad. The prosecutor then asked whether they knew appellant's reputation in the community where he lives for being violent and assaultive against guards and officers. Each witness again responded that he knew appellant's reputation and that it was bad. The prosecutor's next question was whether they knew appellant's reputation in the community where he lives for being violent and assaultive toward other inmates. Once more, each witness responded that he knew appellant's reputation and that it was bad. Finally, the prosecutor asked about appellant's reputation in the community where he lives for being destructive and mischievous. The witnesses replied that they knew appellant's reputation and that it was bad. After appellant's objections to these questions and responses were overruled, the state asked the same witnesses these questions in the jury's presence. Appellant's objections were again overruled.

Article 37.07, Section 3(a) of the Texas Code of Criminal Procedure provides as follows:

Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to the prior criminal record of the defendant, his general reputation and his character. The term prior criminal record means a final conviction in a court of record, or a probated or suspended sentence that has

occurred prior to trial, or any final conviction material to the offense charged. Tex.Code Crim.Proc.Ann. art. 37.07, sec. 3(a) (Vernon 1981). The court of criminal appeals held in *Hoffert v. State*, 623 S.W.2d 141 (Tex.Crim.App.1981), that the reputation of an appellant is an issue at the punishment phase of trial and the state is entitled to introduce such evidence. *Id.* at 147.

■ Appellant asserts that the questions concerning his reputation in the community where he resides for being assaultive and violent toward guards and inmates and for being destructive and mischievous improperly imply specific acts of misconduct towards specific groups of people. He further states that the laws of Texas do not allow or provide for such testimony. However, appellant cites no case law to support this contention.

We do not agree with appellant's statement that the questions asked by the prosecutor improperly imply extraneous offenses. The state did not allude to prior *specific* acts of misconduct, but merely attempted to establish appellant's general reputation and character in the community in which he lives and works; that is, the TDC. The questions regarding appellant's violent, assaultive, destructive or mischievous behavior are merely the converse of questions concerning appellant's peaceful and law-abiding nature. They are opposite sides of the same coin. If appellant were an ordinary citizen and not an inmate in the TDC, it would have been proper for the state to ask its character witnesses if they knew of appellant's general reputation in the community in which he lives for being violent and destructive (non-peaceful) and assaultive and mischievous (non-law-abiding). Furthermore, it would have been proper for the state to ask its witnesses if they knew of appellant's general reputation in the community in which he works for being violent and destructive (non-peaceful) and assaultive and mischievous (non-law-abiding). *Jordan v. State*, 166 Tex.Crim.R. 287, 290 S.W.2d 666 (1956). If the questions had been asked about neighbors of

appellant's community instead of guards and co-workers instead of inmates, there would have been no dispute as to their propriety. Given the composition of the citizenry of appellant's particular community, we find nothing improper about the state's questions. The guards and inmates are his neighbors and co-workers; therefore, no specific acts of misconduct toward a specific party have been raised by the questions.

Moreover, the jury has a valid interest in knowing whether appellant is peaceful and law-abiding or whether he is destructive, mischievous, violent or assaultive in order to properly assess a just and fitting punishment. The court of criminal appeals has stated in *Sparkman v. State*, 580 S.W.2d 358 (Tex.Crim.App.1979), that:

> The jury is concerned at the punishment hearing with evaluating a defendant's background and character *independent* of the commission of the crime on trial. In that context the jury may determine the proper punishment. There is no requirement that defendant's reputation for being peaceful and law-abiding must be based exclusively on final convictions of offenses. *If people in a community* have developed an opinion of defendant's reputation and the character witness has become aware of that reputation through his discussions, the testimony is relevant and admissible.

*Id.* at 360 (first emphasis in original and last emphasis added). Appellant's first ground of error is overruled.

■ Appellant complains in his second ground of error that the state violated Article 33.03 of the Texas Code of Criminal Procedure by denying him the right to be present during portions of his trial. He argues further that his right of confrontation and his right to defend and assist his counsel were violated. Appellant bases these complaints on the state's extensive use of a diagram on direct examination which was positioned in such a way that it could not be seen by appellant. Counsel for appellant was required to ask leave of court to move in order to see the diagram.

Appellant objected to the fact that he could not see the diagram, but the trial court overruled it. However, because appellant's counsel was able to view the diagram and conduct both direct and cross-examination of witnesses from it, we cannot say that appellant was denied his constitutional right of confrontation, his right to assist his counsel, or his right to be present at trial. Appellant's second ground of error is overruled.

■ Appellant asserts in his third ground of error that the conviction should be reversed because a portion of the state's jury argument during the punishment phase of the trial was improper. Appellant failed to object to the allegedly improper argument; error, if any, was waived. *Sanchez v. State,* 589 S.W.2d 422, 424 (Tex. Crim.App.1979). Accordingly, appellant's third ground of error is overruled.

■ In his final ground of error appellant contends the state violated the Texas Speedy Trial Act, Article 32A.02 of the Code of Criminal Procedure. Appellant urges that his detention in administrative segregation after the assault was tantamount to an arrest within the meaning of the Speedy Trial Act. He points out that no indictment was filed until February 6, 1985, some three hundred and five days after his initial detention in administrative segregation. Since the indictment was filed more than one hundred and twenty days after his "arrest," the charges should have been dismissed for failure to grant a speedy trial.

Appellant's detention in administrative segregation did not amount to arrest for purposes of the Speedy Trial Act. *United States v. Duke,* 527 F.2d 386 (5th Cir.), *cert. denied,* 426 U.S. 952, 96 S.Ct. 3177, 49 L.Ed.2d 1190 (1976). Administrative segregation as an internal disciplinary means of classifying prisoners, utilized under the almost total discretion of prison officials, and subject to the interference of the courts only in a case of wide abuse of that discretion. *United States v. Duke,* 527 F.2d at 390. Whether appellant's placement in administrative segregation was for attempt-

ing to go through the dinner line twice or for assaulting Sergeant Neuman, it was not related to or dependent on the state's prosecution of appellant for aggravated assault.

This court in *Garcia v. State,* 625 S.W.2d 431 (Tex.App.—Houston [14th Dist.1981], pet. ref'd), held that appellant's placement in solitary confinement was not the equivalent of being "detained in custody" or of being "arrested" for Speedy Trial Act purposes. The detention in solitary confinement was an administrative action not bearing on appellant's speedy trial rights. The same reasoning can be applied to appellant's detention in administrative segregation in the case at bar. His fourth ground of error is therefore overruled.

The conviction is affirmed.