**Omar ANDERSON a/k/a Erick Williams, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–92–421–CR.**

Court of Appeals of Texas, Fort Worth.

Jan. 12, 1994.

---

Mary B. Thornton, Fort Worth, for appellant.

Tim Curry, Dist. Atty.; Betty Marshall and Charles M. Mallin, Asst. Chiefs of Appellate Section; David M. Curl, Asst. Dist. Atty., Fort Worth, for State.

Before LATTIMORE, DAY and FARRAR, JJ.

## OPINION

LATTIMORE, Justice.

Appellant, Omar Anderson, was convicted by a jury of the offense of murder. *See* TEX.PENAL CODE ANN. § 19.02(a)(1) (Vernon 1989). The jury assessed punishment at life confinement in the Institutional Division of the Texas Department of Criminal Justice. On appeal Anderson raises one point of error contending that the trial court erred in permitting testimony during the punishment phase of the trial concerning Anderson's membership in a gang.

We affirm.

On the evening of October 15, 1991, Larry Logan and his friend Anthony Williams drove to an apartment complex on East Lancaster in Fort Worth. The two had spent several hours talking with friends in the parking lot of the apartments, when a green car stopped near them. Anderson got out of the car and approached Logan and his friends. Anderson had a Mac 11 semiautomatic pistol in his hand as he approached. He walked over to Williams, who was on the hood of the car, and asked him what did he have. When Williams replied that he didn't have anything, Anderson slapped him. Logan, protective of his smaller friend, told Anderson not to slap Williams. Anderson then told Logan to empty his pockets. Logan put the keys on the trunk of the car. Anderson then began to shoot Logan, hitting him four or five times. Anderson testified at the punishment phase that he wanted to shoot Williams too but his gun jammed. After the shooting, Anderson and his friends fled. Before he was arrested, Anderson told a friend: "I saw this dude outside his car [on Lancaster] and the dude start[ed] running for his car and [I sprayed] him." Logan died from his wounds.

In his sole point of error, Anderson asserts that the trial court abused its discretion by permitting the State, over timely defense objection, to elicit testimony during the punishment phase of the trial that Anderson was a member of a gang called "Canine Posse"

involved in the distribution of illegal controlled substances, which he asserts is not permissible punishment evidence pursuant to Tex.Code Crim.Proc.Ann. art. 37.07 § 3 (Vernon 1981 & Supp.1994). The complained-of testimony was as follows:

[PROSECUTOR:] And in your capacity as a patrolman on the east side of Fort Worth, did you have occasion to come into contact with [a] gang that calls themselves Canine Posse?

[OFFICER FERGUSON:] Yes, ma'am.

[PROSECUTOR:] Okay. Can you tell us, what is Canine Posse?

[OFFICER FERGUSON:] The Canine Posse is a gang that just—young individuals, mostly black, that originated in the Caville Apartments which is government housing and their assignments were to distribute narcotics in the complex.

. . . .

[PROSECUTOR:] Officer Ferguson, do you know whether or not Omar Anderson was a member of the Canine Posse gang?

. . . .

[OFFICER FERGUSON:] Yes, ma'am.

[PROSECUTOR:] And how is it that you know Omar Anderson is a member of the Canine Posse?

[OFFICER FERGUSON:] It all started at the Caville Apartments. I normally walked that beat a lot and I got to meet several of the gang members. And I also had several confrontations with Omar Anderson. .

[PROSECUTOR:] And so, while walking the beat out there in the projects, you came across other known gang members?

[OFFICER FERGUSON:] Yes, ma'am.

[PROSECUTOR:] And was Omar Anderson ever in their company?

[OFFICER FERGUSON:] Yes, ma'am.

[PROSECUTOR:] How else would you know that Omar Anderson was a member and running with the Canine Posse gang?

[OFFICER FERGUSON:] Okay. The Canine Posse boys wore Canine Posse tee shirts which were white tee shirts with Canine Posse written on the back and Omar had one on.

 The basis of Anderson's complaint is his characterization of this evidence as proof of an unadjudicated extraneous offense. The State asserts that the evidence is opinion testimony of Anderson's reputation. The types of evidence that the State may introduce in the punishment phase of a trial are defined in the Texas Code of Criminal Procedure, which states in pertinent part that:

Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may, as permitted by the Rules of Evidence, be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including the prior criminal record of the defendant, *his general reputation and his character . . . .*

Tex.Code Crim.Proc.Ann. art. 37.07 § 3(a) (Vernon Supp.1993) (emphasis added).[1] This court has recently addressed the admissibili-

---

1. In an amendment effective for offenses occurring after September 1, 1993, this section now states in pertinent part that:

Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circum-

stances of the offense for which he is being tried, and notwithstanding Rules 404 and 405, Texas Rules of Criminal Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

ty of gang membership in the punishment phase, in *Beasley v. State,* 864 S.W.2d 808 (Tex.App.—Fort Worth, 1993, pet. pending). The reasoning in that case is equally appropriate here:

In interpreting [TEX.CODE CRIM.PROC.ANN. art. 37.07 § 3], the Texas Court of Criminal Appeals has held that evidence is not admissible at the punishment stage unless it is permitted by the Rules of Evidence and, if the evidence sought to be admitted is evidence of an extraneous offense, it satisfies the definition in article 37.07, section 3(a) of "prior criminal record." *See Grunsfeld v. State,* 843 S.W.2d 521, 523 (Tex.Crim.App.1992). The court has also held that evidence other than prior criminal record, general reputation, and character is admissible. *Id.* at 524. Additionally, the court has held that family background, religious affiliation, employment history, and the like are appropriate considerations in assessment of punishment. *Id.* at 524 n. 7; *Murphy v. State,* 777 S.W.2d 44, 64 (Tex.Crim.App.1988) (opinion on reh'g).

The purpose of the evidence presented is to show Beasley's affiliation with a group, the Crips gang, which is dedicated to crime and violence. It seems reasonable that if evidence of Beasley's religious affiliation is an appropriate consideration in determining his punishment, then his affiliation with a gang dedicated to crime and violence is also an appropriate consideration. We therefore hold that the trial court did not err in allowing evidence of Beasley's affiliation with the Crips gang or evidence of the gang's dedication to crime and violence.

*Beasley,* 864 S.W.2d at 810–11. One of our sister courts has held evidence a defendant was a member of a gang does not constitute evidence of an extraneous offense. *See Ybarra v. State,* 775 S.W.2d 409, 411 (Tex.App.— Waco 1989, no pet.) (holding that reputation of gang membership gives the jury valuable information regarding the character of the defendant and should be allowed). *Ybarra* was cited with approval in *Hernandez v.*

*State,* 819 S.W.2d 806, 817 (Tex.Crim.App. 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 2944, 119 L.Ed.2d 568 (1992) (testimony of defendant's involvement in prison gang that had history of violence was relevant and admissible in penalty phase of capital murder prosecution to show characteristic of defendant's lawless nature). Anderson seeks to distinguish these cases because they all involve prison gangs. We do not believe this distinction is relevant where the gang is shown to have a history of illegal activity. We agree with the analysis of the *Ybarra* court, and hold that membership in a gang is not necessarily evidence of an extraneous offense, and may be introduced as evidence of reputation or character during the punishment phase at the discretion of the trial court if it is deemed relevant to sentencing. Point of error one is overruled.

The judgment of the trial court is affirmed.

---

TEX.CODE CRIM.PROC.ANN. art. 37.07 § 3(a) (Vernon Supp.1994).