**Omar ANDERSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 0178–94.**

Court of Criminal Appeals of Texas, En Banc.

June 28, 1995.

Mary B. Thornton, Fort Worth, for appellant.

Tim Curry, Dist. Atty., and Betty Marshall, David M. Curl, Charles M. Mallin, Dist. Attys., Fort Worth, Robert Huttash, State's Atty., Austin, for State.

*OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW*

OVERSTREET, Judge.

Appellant was indicted for the felony offense of murder, pursuant to Texas Penal Code § 19.02(a)(1) (Vernon 1989), alleged to have been committed on or about October 15, 1991, in Tarrant County. In the 213th Judicial District Court of Tarrant County, the jury found appellant guilty and assessed life imprisonment in the Institutional Division of the Texas Department of Criminal Justice on October 16, 1992. Appellant's conviction was affirmed by the Fort Worth Court of appeals. *Anderson v. State,* 868 S.W.2d 915 (Tex. App.—Fort Worth 1994).

We granted appellant's petition for discretionary review to determine whether the court of appeals erred in holding that the State pursuant to Tex.Crim.Proc.Code Ann. art. 37.07 (Vernon 1993) can elicit testimony during the punishment phase of the trial concerning appellant's membership in a gang.[1]

## I. SUMMARY OF PERTINENT FACTS

During the punishment phase of the trial, the State called Officer Ferguson, a police officer, to testify. Officer Ferguson testified to having personal knowledge of appellant's membership in a gang called the "Canine Posse." The police officer further testified that the purpose of the gang was to distribute narcotics in the Caville apartment complex. The testimony of the police officer is as follows:

---

1. Appellant's ground for review cites the wrong amendment to the statute. Instead of 1993, the correct year is 1989.

PROSECUTOR:

Q. And in your capacity as a patrolman on the east side of Fort Worth, did you have occasion to come into contact with [a] gang that call[s] themselves the Canine Posse?

A. Yes, ma'am.

Q. Okay. Can you tell us, what is the Canine Posse?

A. The Canine Posse is a gang that just—young individuals, mostly black, that originated in the Caville Apartments which is government housing and their assignments were to distribute narcotics in the complex.

．　　．　　．　　．　　．

Q. Officer Ferguson, you say they are a gang and their responsibilities are to carry out narcotics distribution. Is that right?

DEFENSE: I'm going to object to that. Unless he has personal knowledge of that, that's hearsay also.

THE COURT: Sustain the objection.

PROSECUTOR:

Q. Do you have personal knowledge of that, Officer Ferguson?

A. Yes.

Q. Is that the Canine Posse's purpose?

A. Yes, ma'am.

Q. Do you know an individual named Omar Anderson?

A. Yes, ma'am.

Q. Do you see Omar Anderson in the courtroom today?

A. Yes, ma'am.

．　　．　　．　　．　　．

Q. Officer Ferguson, do you know whether or not Omar Anderson was a member of the Canine Posse gang?

DEFENSE: I'm going to object to that. Unless he has personal knowledge, it's hearsay.

THE COURT: All right. I'll sustain the objection.

PROSECUTOR:

Q. The question is, do you know?

A. Yes, ma'am.

Q. Do you have personal knowledge?

A. Yes, ma'am.

Q. And how is it that you know Omar Anderson is a member of the Canine Posse?

A. It all started at the Caville Apartments. I normally walked that beat a lot and I got to meet several of the gang members. And I also had several confrontations with Omar Anderson.

Q. And so, while walking the beat out there in the projects, you came across other known gang members?

A. Yes, ma'am.

Q. And was Omar Anderson ever in their company?

A. Yes, ma'am.

Q. How else would you know that Omar Anderson was a member and running with the Canine Posse gang?

A. Okay. The Canine Posse boys wore Canine Posse tee shirts which were white tee shirts with Canine Posse written on the back and Omar had one on.

Appellant took the stand sometime after Officer Ferguson's testimony had been admitted into evidence. Although appellant admitted hanging out with members of the Canine Posse, he denied any gang membership. Additionally, he refuted Officer Ferguson's characterization of the gang; instead, he compared the gang to some sort of social club.

Other relevant facts from the punishment phase include reputation testimony from five State witnesses who testified that appellant had a bad reputation for "being a peaceful and law-abiding citizen."

## II.   COURT OF APPEALS HOLDING

The Fort Worth Court of Appeals affirmed appellant's conviction in a published opinion on January 12, 1994. The court of appeals relied on the analysis of the *Ybarra* court and held that membership in a gang is not necessarily evidence of an extraneous offense; it may be introduced as evidence of reputation or character during the punishment phase of

the trial court if the trial court deems it is relevant to sentencing. *Anderson v. State,* 868 S.W.2d 915 (Tex.App.—Fort Worth 1994). In *Ybarra,* the Waco Court of Appeals held that reputation of gang membership gives the jury valuable information regarding the character of the defendant and should be allowed. *Ybarra v. State,* 775 S.W.2d 409 (Tex.App.—Waco 1989).

## III. APPELLANT'S CONTENTION

Appellant contends that the trial court admitted inadmissable evidence when it permitted the State to elicit testimony of appellant being in the "Canine Posse" gang whose purpose is to distribute narcotics. According to appellant, this is not permissible punishment evidence pursuant to Tex.Code Crim. Proc.Ann. Art. 37.07 § 3(a) (Vernon Supp. 1989) and the Texas Rules of Criminal Evidence, Rules 404 and 405.

Appellant characterizes the testimony in question as inadmissable evidence of unadjudicated extraneous offenses. The introduction of this testimony, according to appellant, allowed the jury to infer that the gang's activities were also those of the appellant. He asserts that such an inference should not be allowed because it "clearly implies that appellant as a 'Canine Posse' gang member was guilty of numerous felony offenses involving the delivery of illegal narcotics." Therefore, appellant insists that the police officer testified to specific instances of conduct which are not permitted here under Rule 405 of the Texas Rules of Criminal Evidence. Specific instances of conduct are only allowed when character or a trait of character is an essential element.

In accordance with Rule 405, the permissible method of character evidence would have been reputation or opinion testimony. It is appellant's contention that this particular testimony goes beyond the scope of proper reputation testimony because it is not limited to whether appellant's reputation for being a peaceable and law abiding citizen was good or bad.

It is further contended by appellant that such an inference is not harmless error because although appellant was eligible for probation, he received the maximum sentence in this case of Life Imprisonment.

## IV. STATE'S CONTENTION

The State refers to the objected-to testimony as being "circumstances of the offender" that are relevant to the punishment issues.[2] According to the State, gang affiliation, like any other affiliation of the appellant's, is relevant and should not be prohibited just because it is not mitigating. An additional argument for the allowance of aggravating factors suggests that appellant, at some point, "opened the door" to the objected-to testimony.

In rebuttal of appellant's characterization of the testimony, the State contends that appellant did not adequately show that the objected-to testimony was evidence of extraneous offenses. Additionally, it is "faulty logic," according to the State, to make the inference that appellant committed extraneous offenses just because the gang engages in certain activities. The State, citing *Harris v. State,* 827 S.W.2d 949 (Tex.Cr.App.1992), further suggested that even if the testimony could be considered to include unadjudicated extraneous offenses, the testimony should not be excluded as evidence since it does not refer to a specific offense. The mere suggestion of a possibility of an extraneous offense would not be enough. *Roach v. State,* 586 S.W.2d 866 (Tex.Cr.App.1979).

In the alternative, if the testimony is construed as referring to extraneous offenses or specific instances of conduct, the State argues that it should be allowed under Rules 404(c) and 405(b) of the Texas Rules of Criminal Evidence. The State insists that "the [Appellant's] character is always in issue at

---

2. According to the State, "circumstances of the offender," a newly-coined phrase, is broader than character evidence. The State cites *Murphy, McMillian,* and *Stiehl* as authority for this point. *Murphy v. State,* 777 S.W.2d 44 (Tex.Cr. App.1988); *McMillian v. State,* 850 S.W.2d 777 (Tex.App.—Houston [14th] 1993, rev'd 865 S.W.2d 459); and *Stiehl v. State,* 585 S.W.2d 716 (Tex.Cr.App.1979). Additionally, the State refers to the legislature as intending Art. 37.07 § 3 of the Tex.Code Crim.Proc. to be interpreted more expansively by the 1993 Amendment after the *Grunsfeld* decision. *Grunsfeld v. State,* 843 S.W.2d 521 (Tex.Cr.App.1992).

punishment under Rule 404(c) and thus under 405(b), specific acts are admissible to show character." More specifically, the character traits for rehabilitation capacity and future dangerousness are at issue; therefore specific acts are permitted.

Lastly, the State argues that any error found would only be harmless. Even without the objected-to testimony, a jury could have easily reached the same decision on punishment based on the additional overwhelming evidence that was admitted. See *Harris v. State*, 790 S.W.2d 568 (Tex.Cr.App.1989).

## V. ANALYSIS

■ In order to address the issue, we must look to Art. 37.07 § 3(a) of the Code of Criminal Procedure, and Rule 404(c) of the Texas Rules of Criminal Evidence. Article 37.07 § 3(a) of the 1989 amendment, states that evidence, so long as it is permissible under the Rules of Evidence, may be offered as to "any matter the court deems relevant to sentencing, including the prior criminal record of the defendant, his general reputation and his character." Additionally, Rule 404(c) of the Texas Rules of Criminal evidence provides in part that during the penalty phase of a trial, "evidence of a defendant's character may be offered by an accused or by the prosecution." Taking both of these rules into consideration, we must now determine whether the court of appeals erred in holding that the State could elicit the complained of testimony because it was relevant and its probative value outweighed any unfair prejudice to appellant.

The Tenth Court of Appeals held that evidence of gang membership is admissible. *Ybarra v. State*, 775 S.W.2d 409 (Tex.App.— Waco 1989, no pet.). See also *Moreno v. State*, 858 S.W.2d 453 (Tex.Cr.App.1993) and *Hernandez v. State*, 819 S.W.2d 806 (Tex.Cr. App.1991). The *Ybarra* court held that evidence of gang membership was relevant to show character of the defendant, and was therefore admissible. Such was found to be relevant because evidence of gang membership can help the jury evaluate the character of the accused.

■ The objected-to testimony in this case did establish three things: 1) appellant was a member of the "Canine Posse" gang; 2) the "Canine Posse" gang had a bad reputation; and 3) the gang was involved in the distribution of narcotics in the Caville apartment complex. The testimony of Officer Ferguson revealed that appellant was a member of a gang, and gang membership is relevant character evidence and therefore admissible. Furthermore, Officer Ferguson's testimony regarding the negative reputation of the gang was admissible as opinion based on personal knowledge.

■ The last question we must answer is whether the evidence of the activities of the gang was properly admitted. Although relevant, gang membership alone would be meaningless to a jury which has no knowledge of the gang's purpose or activities. For the jury to assess a defendant's character based on his gang membership, not only should the jury know of the defendant's gang membership, but also of the activities and purposes of the gang to which he belongs. Without this additional information, the jury has nothing to conclude whether membership in this gang is a positive or negative character trait of the defendant. Therefore, because the evidence about the gang's activities is relevant to the issue of appellant's character, it is admissible evidence. See *Hedicke v. State*, 779 S.W.2d 837 (Tex.Cr.App.1989) and *Palmer v. State*, 716 S.W.2d 174 (Tex.App.— Houston [14th] 1986, pet. ref.)

## VI. CONCLUSION

We hold that the court of appeals did not err in its finding that the State was allowed to elicit the complained of testimony based on its relevancy to appellant's character. While the testimony of the misconduct of the gang may have been prejudicial, we find that it was not unfairly prejudicial because the sentencers were only required to determine appellant's character based on his gang membership. They were not required to determine whether appellant was guilty of the misconduct or bad acts, of the gang. Accord-

ingly, the judgment of the court of appeals is affirmed.

McCORMICK, P.J., concurs in the result.

CLINTON, Judge.

This is a companion case to *Beasley v. State*, 902 S.W.2d 452 (Tex.Cr.App.1995). As in *Beasley*, the issue in this cause is whether admission of evidence that appellant belonged to a street gang is prohibited at the punishment phase of a non-capital trial by Article 37.07, § 3(a), V.A.C.C.P. As in *Beasley*, the version of Article 37.07, § 3(a) applicable here is the same as that which we construed in *Grunsfeld v. State*, 843 S.W.2d 521 (Tex.Cr.App.1992). Today a plurality of the Court holds, as in *Beasley*, that evidence of appellant's gang affiliation is admissible because it is "relevant" to prove his character.

Of course, although gang affiliation is undoubtedly "relevant" to prove appellant's character, the one thing that we know for sure under Article 37.07, § 3(a) (inasmuch as it incorporates Rule 405(a) of the Rules of Criminal Evidence) is that gang affiliation is not an admissible method of proving character *per se*. See *Beasley*, supra (Clinton, J., concurring) (902 S.W.2d at 457–58 & 462). Thus, the plurality errs to hold that because it is relevant to prove character, evidence of appellant's membership in a street gang is admissible. But that is not to say that it is not admissible for some other legitimate purpose. "To the extent the State may offer it as a 'circumstance of the offender,' bearing on proper punishment in some respect apart from his character *per se*, it should be admitted, Article 37.07, § 3(a) notwithstanding." *Id.* (Clinton, J., concurring) (902 S.W.2d at 462).

As in *Beasley*, the State did not limit its proffer of evidence in this cause to whatever tendency it had to prove appellant's character *per se*. Nor did appellant request a limiting instruction requiring that the evidence not be considered in any respect as character evidence, as, in my view, he would have been entitled to. As in *Beasley*, I therefore join the judgment of the Court affirming the court of appeals. But as in *Beasley*, I cannot join the plurality opinion.

MEYERS, J., joins.

MANSFIELD, Judge.

I join the judgment of the Court. I write separately, however, because I believe the Court's analysis is incomplete.

### I. The Relevant Facts

During the punishment phase of appellant's trial, the State called a Fort Worth police officer to the witness stand. Officer Ferguson testified that his beat covered the east side of Fort Worth, which included the Caville Apartments. He also testified that he was familiar with a gang known as "the Canine Posse," which he said originated in the Caville Apartments. One of the gang's activities was to distribute illegal narcotics in the apartments. Officer Ferguson testified further that, based on his personal knowledge, appellant was a member of the Canine Posse:

[PROSECUTOR]: And how is it that you know Omar Anderson is a member of the Canine Posse?

[FERGUSON]: It all started at the Caville Apartments. I normally walked that beat a lot and I got to meet several of the gang members. And I also had several confrontations with Omar Anderson.

Q. And so, while walking the beat out there in the projects, you came across other known gang members?

A. Yes, ma'am.

Q. How else would you know that Omar Anderson was a member and *running* with the Canine Posse gang?

A. OK. The Canine Posse boys wore Canine Posse tee shirts which were white tee shirts with Canine Posse written on the back and Omar had one on.

Appellant himself testified after Officer Ferguson and denied that he was a member of the Canine Posse. He conceded that he "hung out" with members of the Canine Posse, but he compared the group to a social club and denied Officer Ferguson's charac-

terization of it. Five State witnesses testified during the punishment phase as to appellant's bad reputation for being "a peaceful and law-abiding citizen."

## II. Is Evidence of Gang Membership Admissible Under State Law At the Punishment Phase of a Non–Capital Trial?

Texas Rule of Criminal Evidence 404(c) provides: "In the penalty phase, evidence may be offered by the accused or by the prosecution as to the prior criminal record of the accused. Other evidence of his character may be offered by an accused or by the prosecution. Nothing herein shall limit provisions of Article 37.071, Code of Criminal Procedure."

Article 37.07, § 3(a), of the Texas Code of Criminal Procedure permits introduction of evidence, at the punishment phase of a noncapital trial, offered by either the State or by the defendant as to any matter the court deems relevant to sentencing. Included is evidence as to the defendant's prior criminal record, his general reputation, his character or an opinion regarding his character. Evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt to have been committed by the defendant may also be admitted even if the defendant has never been charged with or finally convicted of the crime or bad act. It is important to note that the preceding sentence does *not* apply to appellant since the offense for which he was tried was committed prior to the effective date of the 1993 amendment to Article 37.07. (Prior to the 1993 amendment, evidence of extraneous crimes/bad acts was not admissible absent a final conviction.)

Membership in a gang is not a bad act or a crime. Gang membership is part of an individual's background or circumstances. It is beyond dispute that evidence of an individual's membership in the Boy Scouts, Rotary Club, or the Shriners is admissible at punishment as evidence of good character. A plain reading of Article 37.07 leads to the conclusion that membership in organizations dedicated primarily to illegal aims, e.g., the Canine Posse, is admissible at punishment as evidence of bad character. *Grunsfeld v. State,* 843 S.W.2d 521 (Tex.Crim.App.1992),

is not applicable, because *Grunsfeld* dealt with improper admission of unadjudicated extraneous offenses, and gang membership is *not* an unadjudicated extraneous offense.

At least two Texas courts have concluded that gang membership is not excludable as an extraneous offense. *Langley v. State,* 723 S.W.2d 813 (Tex.App.—Tyler 1987); *Ybarra v. State,* 775 S.W.2d 409 (Tex.App.—Waco 1989). In *Ybarra* the court held gang membership is relevant to character and was properly admitted at punishment. This Court, in *Fuller v. State,* 829 S.W.2d 191 (Tex.Crim.App.1992), stated that, "because organizations with illegal aims are not protected by the Constitution, neither is membership with intent to further those aims." *Fuller* at 196, discussing *U.S. v. Lemon,* 723 F.2d 922 (D.C.Cir.1983). In *Fuller,* this Court found, based on testimony offered at trial, that the Aryan Brotherhood was a criminal organization and that it was not a violation of the First Amendment to introduce evidence of the defendant's active membership in it.

Evidence of gang membership is admissible as character evidence at punishment under Rule 404(c) and Article 37.07 § (3)(a). In order to avoid undue prejudice to the defendant, the trial court should instruct the jury that the defendant's membership in the gang must not be construed as making him responsible for crimes or bad acts allegedly committed by the gang. However, given the overwhelming evidence of appellant's bad character presented at his trial, failure to give this instruction was harmless beyond a reasonable doubt. *See* Tex.R.App.Proc. 81(b)(2).

## III. Is Evidence of Gang Membership Admissible Under the First Amendment?

It is well-established that an individual's right to associate with others and to join groups holding similar beliefs is protected by the First Amendment. See *Aptheker v. Secretary of State,* 378 U.S. 500, 84 S.Ct. 1659, 12 L.Ed.2d 992 (1958). This protection applies regardless of whether the group or individuals involved hold views that are "politically correct" or are otherwise consistent

with mainstream political views. In *Zant v. Stephens,* 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983), the Supreme Court held that an aggravating circumstance under Georgia's death penalty laws, namely "a history of serious assaultive criminal convictions," was not constitutionally protected behavior. *Zant* at 884, 103 S.Ct. at 2746. In *Street v. New York,* 394 U.S. 576, 89 S.Ct. 1354, 22 L.Ed.2d 572 (1969), the Court struck down a conviction that the record indicated could have been based on petitioner's constitutionally protected speech as well as on his arguably unprotected conduct, flag burning. The Court stated that "when a single count indictment or information charges the commission of a crime by virtue of a defendant's having done both a constitutionally protected act and one which may be unprotected, and a guilty verdict ensues without elucidation, there is an unacceptable danger that the trier of fact will have regarded the two acts as 'intertwined' and have rested the conviction on both together." *Street* at 588, 89 S.Ct. at 1363–1364.

It is clear that constitutionally-protected behavior cannot be used as the basis for a criminal conviction. Merely wearing a Canine Posse T-shirt is protected by the First Amendment; however, appellant has not been charged with that. The question here is, under what circumstances can membership in a gang can be admitted at the punishment phase of a criminal trial?

This issue was addressed in *Dawson v. Delaware,* 503 U.S. 159, 112 S.Ct. 1093, 117 L.Ed.2d 309 (1992). Dawson was convicted of first degree murder by a jury. At the penalty phase of Dawson's trial, the State gave notice that it intended to introduce expert testimony about the organization known as the "Aryan Brotherhood" as well as the fact that Dawson had the words "Aryan Brotherhood" tattooed on the back of his right hand and swastikas tattooed on other parts of his body. Dawson argued that this evidence was irrelevant and inflammatory and that its admission would violate his rights under the First and Fourteenth Amendments.

Dawson agreed, however, to a two-sentence stipulation describing the Aryan Broth-

erhood as a white racist prison gang, and this stipulation was admitted in lieu of the evidence described in the preceding paragraph. No evidence of alleged illegal activities by the Aryan Brotherhood was introduced. Nor was any evidence introduced that the Brotherhood was organized primarily for illegal purposes.

The Supreme Court has held several times that "the sentencing authority has always been free to consider a wide range of relevant material." *Payne v. Tennessee,* 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991); see also *United States v. Tucker,* 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972). For example, in *Barclay v. Florida,* 463 U.S. 939, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983), the Court held that the sentencing judge could take into account Barclay's hatred of white people as well as Barclay's expressed desire to start a race war (Barclay was black and was part of a group advocating killing whites, such as the victim for which Barclay was convicted of killing).

In *United States v. Abel,* 469 U.S. 45, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984), the Court held that evidence that both the defendant and a witness were members of the Aryan Brotherhood was admissible as impeachment evidence. The Court emphasized that evidence was introduced that members of the Aryan Brotherhood were sworn to lie on behalf of each other.

In holding that the Constitution does not per se bar admission of evidence concerning one's constitutionally protected associations or beliefs at sentencing, the *Dawson* Court did, however, rule the admission of the stipulation concerning Dawson's membership in the Aryan Brotherhood was constitutional error. It was error because Dawson's membership was not shown to have anything to do with the crime for which he was convicted and thus the evidence was not relevant. The Court stressed that membership in the Aryan Brotherhood, at most, showed Dawson's abstract beliefs and did not show, for example, whether Dawson would be a continuing danger or a threat to an identifiable ethnic or racial group. The Court implied that the State's real purpose in employing the evidence was to inflame the jury against Daw-

son because it would find his beliefs repugnant.

The record in the present case shows that a rational trier of fact could find that appellant was a member of the Canine Posse. Testimony showed that the Canine Posse was involved in drug trafficking in and around the Caville Apartments. No testimony was introduced to show that the Canine Posse was a benign social organization or an organization espousing any constitutionally protected activities or beliefs. Appellant never objected to being characterized as a gang member; he did object to being inferentially labeled a drug dealer because the gang allegedly dealt in drugs. The State never suggested, directly or otherwise, that appellant was a drug dealer because he was a member of the Canine Posse; the evidence of the Canine Posse's activities was introduced to demonstrate that it was an organization primarily devoted to illegal goals.

*Dawson v. Delaware* forbids the use of evidence of membership in an organization on First Amendment grounds at the punishment phase of an individual's trial unless the evidence is relevant, necessary for impeachment, or is rebuttal evidence. Membership in an organization organized primarily for illegal activities is not protected by the First Amendment and, therefore, evidence of appellant's membership in the Canine Posse was properly admitted at the punishment phase of his trial.

### IV. Conclusion

Admission of evidence of membership in a gang whose primary purpose is illegal activity is not barred by the First Amendment as interpreted by the Supreme Court in *Dawson, Barclay,* and *Abel.* And, such evidence is admissible under Article 37.07 § (3)(a) and Rule 404(c). Thus, appellant's membership in the Canine Posse was properly admitted at the punishment phase of his trial.

MALONEY, Judge, dissenting.

Reaffirming the reasoning in my dissenting opinion in *Beasley v. State,* 902 S.W.2d 452 (Tex.Crim.App.1995) (Maloney, J., dissenting), I dissent. The evidence of gang membership in the instant case fails to meet the standard articulated in *United States v. Lemon,* 723 F.2d 922, 941 (D.C.Cir.1983), applied by this Court in *Fuller v. State,* 829 S.W.2d 191, 197–98 (Tex.Crim.App.1992). Evidence of group affiliation may not be admitted at punishment unless the evidence is sufficient to establish that the defendant is a member of the group, the group's aims are illegal, and the defendant intended to further those illegal aims. *Lemon,* 723 F.2d at 941. As in *Beasley,* 902 S.W.2d at 470 (Maloney, J., dissenting), the evidence is insufficient to establish that appellant intended to further the activities of the gang, the third prong of the *Lemon* test. Officer Furguson testified that he had observed appellant in the company of other known gang members and that he had seen appellant wearing a Canine Posse tee shirt. Plurality opinion at 948. He further testified that the purpose of the Canine Posse is to distribute narcotics; however, appellant took the stand and objected to that characterization of the gang, maintaining that the gang is more like a social club. Notably, no linkage between narcotics distribution and appellant was established; that is, the record is devoid of evidence that appellant engaged in some act that indicated that he intended to further the illegal aims of the gang or that he actually participated in gang-related illegal activities. Absent this connection, the gang membership evidence is of minimal relevance and unfairly prejudicial. *See Beasley,* 902 S.W.2d 471 (Maloney, J., dissenting).

BAIRD, J., joins.