NO. 07-06-0296-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



FEBRUARY 27, 2007



______________________________




DARRYL MOSELEY, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 399TH DISTRICT COURT OF BEXAR COUNTY, TEXAS;



NO. 2005-CR-4353; HONORABLE JUANITA A. VASQUEZ-GARDNER, JUDGE


_______________________________




Before CAMPBELL, HANCOCK and PIRTLE, JJ.



OPINION




 A jury convicted Appellant, Darryl Moseley, of the offense of murder and assessed
his sentence at confinement for life. Presenting five points of error, he contends:

 (1) and (2) his confession should have been suppressed because it was
coerced by the police and involuntary;


 (3) his subsequent statement to the media admitting his guilt should also
have been suppressed as "fruit of the poisonous tree";


 (4) the recordings of his custodial telephone conversations were illegal; and


 (5) the evidence regarding his gang affiliation was inadmissible.



We affirm the judgment of the trial court.



Background Facts




 On March 11, 2005, the San Antonio Police Department received a report of a
burglary at 9523 Millbrook. Upon investigation of that burglary, the police discovered a
large volume of blood present throughout the residence. Although no body was found,
crime scene investigators believed that they were dealing with a murder scene, not a
burglary. Investigators soon identified Appellant as a person of interest based upon the
fact that in the days immediately preceding the burglary report he had been staying at the
residence with the consent of the legal occupant.

 On the same day, but unrelated to the burglary report, the San Antonio Police
Department received a missing persons report from the parents of 18-year-old Ashley Lynn
Degerstrom. Ashley's parents had become concerned when she did not call nor return
home as expected. In addition to the missing persons report, Ashley's parents reported
her vehicle, a blue Dodge Neon, as being stolen.

 The next day an officer with the San Antonio Police Department Helicopter Detail
Unit observed a vehicle matching the description of Ashley's Dodge Neon pull into an
apartment complex. That officer observed a black male wearing a red sleeveless shirt,
black shorts, and a bandana exit the driver's side of the vehicle and run towards the back
of the apartment units. These observations were relayed to officers on the ground who
were in the immediate area of the apartment complex. Detectives soon arrived, observed
the blue Dodge Neon, and confirmed that the license plate matched that of Ashley's
vehicle. Appellant was located in one of the nearby apartment units and was placed under
arrest for an unrelated felony warrant. (1) Appellant was placed in the backseat of a marked
patrol vehicle and was read his Miranda warnings by Detective Timm Angel.

 While Appellant sat in the patrol vehicle, officers reached inside the stolen vehicle,
popped the trunk, and discovered Ashley's body. Based upon this discovery, Appellant
was transported to the homicide division of the San Antonio Police Department.

 Upon arrival at the police department, Appellant was interviewed by Detectives
Timm Angel and John Slaughter after again being given his Miranda warnings. The
interview was recorded on DVD. During the interview, Appellant never requested an
attorney, nor invoked his right to remain silent; however, he was freely permitted to make
several telephone calls. Although Appellant initially denied knowing Ashley, after going
through many different versions of what occurred, he eventually confessed to killing
Ashley. In that interview Appellant admitted to hitting Ashley with his fist, beating her with
a miniature baseball bat, kicking her with his foot, strangling her, and shoving her body into
the trunk of her own vehicle. Appellant also admitted to driving around in Ashley's vehicle,
with her body in the trunk until he was arrested. Based upon this confession, investigators
sought and obtained an arrest warrant for murder.

 After the interview was completed, Appellant was transported from the interview
room of the police department to the detention center. While being moved to a police
vehicle for transportation, members of the media asked Appellant questions concerning
the homicide. Appellant responded by admitting that he had killed Ashley Degerstrom.

Voluntariness of Confession


 By his first and second points of error, Appellant contends that the trial court erred
by failing to suppress the confession given to Detective Slaughter because the confession
was the product of illegal police coercion, in violation of the Constitutions of both the United
States and the State of Texas.

 As to Appellant's second point, we need not decide whether the Texas Constitution
provides any greater protections than that of its federal counterpart, because Appellant
presents no argument or authority as to that issue. As such, Appellant's argument is
inadequately briefed and presents nothing for this Court to review. Appellant's second
point of error is waived. See Tex. R. App. P. 38.1(h); Johnson v. State, 853 S.W.2d 527,
533 (Tex.Crim.App. 1992) cert. denied, 510 U.S. 852 (1993).

 Appellant, by his first point, questions the propriety of the trial court's denial of his
motion to suppress. A trial court's ruling on a motion to suppress a confession is reviewed
on an abuse of discretion standard. Balentine v. State, 71 S.W.3d 763, 768
(Tex.Crim.App. 2002). In determining whether the trial court abused its discretion we give
"almost total deference to a trial court's determination of the historical facts" and review the
court's application of the law to the facts de novo. Guzman v. State, 955 S.W.2d 85, 88-89
(Tex.Crim.App. 1997). Where the trial court has not made explicit findings of fact, we
review the evidence in the light most favorable to the trial court's ruling and assume that
the trial court made implicit findings of fact to support the ruling. Carmouche v. State,10
S.W.3d 323, 327-28 (Tex.Crim.App. 2000). The decision of the trial court will be sustained
if it is correct on any theory of law applicable to the facts of that case. State v. Ross, 32
S.W.3d 853, 856 (Tex.Crim.App. 2000).

 When determining whether a confession should have been excluded for violation
of the Constitution of the United States, we must decide whether the confession was
voluntary or coerced. See Arizona v. Fulminante, 499 U.S. 279, 285-86 (1991); Colorado
v. Connelly, 479 U.S. 157, 167 (1986). We determine the voluntariness of a confession
by examining the totality of the circumstances surrounding the confession. Creager v.
State, 952 S.W.2d 852, 856 (Tex.Crim.App. 1997). A confession will be considered
involuntary if it is the product of police conduct that was of such a nature that the statement
was not the free and unconstrained statement of the accused. Alvarado v. State, 912
S.W.2d 199, 211 (Tex.Crim.App. 1995). The essential question to determine is whether
the accused's free will was "overborne" by the circumstances surrounding the confession.
Dickerson v. U.S., 530 U.S. 428, 434 (2000). In answering that question, we must consider
the "totality of the circumstances," including: (1) relevant facts about the interrogation itself,
such as the physical location of the interrogation, the length of the detention, and the
number of people present; (2) the extent to which the accused was denied access to
outside resources, such as family, friends, or a lawyer; (3) whether the accused was
denied essential physical needs, such as food, drink, or access to a bathroom; (4) the
physical comfort or discomfort of the accused; (5) the mental and physical condition of the
accused; and (6) the nature and extent of any promises or threats made to the accused. 
See Fulminante, 499 U.S. at 286; Nenno v. State, 970 S.W.2d 549, 557 (Tex.Crim.App.
1998), overruled on other grounds, State v. Terrazas, 4 S.W.3d 720, 727 (Tex.Crim.App.
1999).

 The police interview of Appellant was conducted by Detectives Slaughter and Angel
on March 12, 2005, shortly after Appellant's arrest. The interview was conducted at the
San Antonio Police Department and lasted just less than three and a half hours. The entire
interview was recorded and a DVD of that interview was introduced into evidence. In
addition to the recording of the interview itself, at the hearing on Appellant's motion to
suppress, the trial court was provided with the testimony of Detectives Slaughter and
Angel. At the conclusion of that hearing, the trial court found that (1) the confession was
freely and voluntarily made; (2) Appellant had not been subjected to any coercion or
mistreatment; (3) no promises or threats were made to Appellant; and (4) the confession
was admissible under both the United States Constitution and the Texas Constitution, as
well as articles 38.22 and 38.23 of the Code of Criminal Procedure.

 In reviewing the propriety of the trial court's decision, we have considered the
various factors set forth hereinabove. Nothing about the physical location of the interview,
its length or the number of persons present during the interview suggests that it was a
coercive setting. Secondly, Appellant never requested an attorney, although he was 
aware of his right to a lawyer when he made an outside call to a friend and suggested that
the friend "get a lawyer." He was not denied any essential needs and was, in fact, provided
with food and drink during the interview. He was not handcuffed during the interview and
was able to get up and walk around. Nothing in the recorded interview or the testimony
available to the trial court suggests that Appellant was mentally or physically unable to
exercise his own free will. Finally, no promises were made to the him and the only "threats"
made amounted to informing the him of what charges he potentially faced. Based upon
the totality of the circumstances, we find that the trial court did not abuse its discretion in
finding that his confession was admissible. Appellant's first point of error is overruled.

Appellant's Statements to the Media


 After Appellant had given his statement to the police and while he was being
transported to a police vehicle, he was confronted by the media and asked whether he had
killed Ashley Dergstrom. His affirmative response was introduced into evidence. By his
third point of error, he contends the trial court erred by failing to suppress this statement
because it was "fruit of the poisonous tree," tainted by his involuntary confession. As
previously stated, Appellant's initial confession was not involuntary; therefore, this
statement could not have been rendered inadmissible by the circumstances of that
confession. Appellant does not raise, and we do not decide, whether the statement itself
was involuntary based upon the facts and circumstances surrounding the making of that
statement; nor do we decide whether this was a statement made as the result of a
custodial interrogation. Appellant's third point of error is overruled.

Recorded Telephone Conversations


 By his fourth point of error, Appellant contends the trial court erred by overruling his
objection to that portion of the recorded interview in which he was allowed to make two
telephone calls. Specifically, he contends the recording of his side of the conversation
constitutes an interception of a wire communication in violation of § 16.02 of the Penal
Code. See Tex. Pen. Code Ann. § 16.02 (Vernon Supp. 2006). Appellant contends the
statements are, therefore, inadmissible pursuant to § 2(a)(1) of article 18.20 of the Code
of Criminal Procedure. See Tex. Code Crim. Proc. Ann. art. 18.20, § 2(a)(1) (Vernon
Supp. 2006). At the outset, we must draw a distinction between "wire communications"
and "oral communications," and we must attribute to those terms the meaning given in
article 18.20. In that article, a "wire communication" is defined as "an aural transfer made
in whole or in part through the use of facilities for the transmission of communications by
the aid of wire, cable, or other like connection between the point of origin and the point of
reception . . . . " Id. at § 1(1). That same article defines an "oral communication" as a
"communication uttered by a person exhibiting an expectation that the communication is
not subject to interception under circumstances justifying that expectation." Id. at § 1(2)
(emphasis added). Although Appellant's statements were being transferred to a third-party
via a "wire communication," that communication was not being offered into evidence. 
Because the evidence offered was merely a recording of Appellant's side of the
conversation it was not a "wire communication" and the trial court was required only to
determine whether that communication was made with a reasonable expectation of
privacy. 

 The evidence showed there were signs in the area of the interrogation room that
informed Appellant he was being videotaped. Although Detective Slaughter could not say
for certain whether Appellant was advised or aware of those signs, Appellant did admit on
the videotape itself that he was aware that he was subject to being recorded. That fact
alone defeats Appellant's contention that his statements were made with an expectation
that they were not subject to interception. Furthermore, the circumstances here are
comparable to a statement made by a defendant while in a jail cell, a scenario in which the
Supreme Court has said that there is no expectation of privacy. See Hudson v. Palmer,
468 U.S. 517, 525-26 (1984). Therefore, without deciding whether the recording of
Appellant's side of a telephone conversation constitutes an "interception" of that
communication for purposes of § 16.02 of the Penal Code, we conclude the
communication itself was not made under circumstances that justify an expectation that
the communication would not be intercepted and is, therefore, not an "oral communication"
within that statutory definition. See State v. Scheineman, 77 S.W.3d 810, 813
(Tex.Crim.App. 2002). Appellant's fourth point of error is overruled.

Gang Affiliation


 By his fifth and final point of error, Appellant contends the trial court erred by
admitting evidence of his gang affiliation because the State did not provide the jury with
evidence concerning the reputation and character of the gang. We disagree. 

 A trial court's decision to admit or exclude evidence is reviewed under an abuse of
discretion standard. McDonald v. State, 179 S.W.3d 571, 576 (Tex.Crim.App. 2005). It has
been determined that evidence of gang affiliation may be relevant and admissible at the
punishment phase of a trial for its bearing on the character of the accused. Anderson v.
State, 901 S.W.2d 946, 950 (Tex.Crim.App. 1995). Evidence of gang affiliation alone is,
however, meaningless to a jury which has no knowledge of the gang's purpose or activities. 
Without this additional information, the jury would be asked to speculate whether
membership in that particular gang reflects positively or negatively upon the character of the
accused. Therefore, evidence of gang affiliation is relevant and admissible to show the
character of the accused, if evidence of the gang's activities is also presented. Id.; Beasley
v. State, 902 S.W.2d 452, 457 (Tex.Crim.App. 1995).

 Appellant testified during the punishment phase of the trial. On cross-examination
the State asked him several questions relating to his gang affiliation. At that time
Appellant's trial counsel neither objected to any of the State's questions, nor asked the trial
court to instruct the jury to disregard any of the evidence presented pertaining to gang
affiliation. Appellant contends his objection was not waived because he had obtained a
"running objection" to evidence of gang affiliation prior to trial. Without addressing the issue
of preservation of error, a review of the record reveals Appellant's original contention is
without merit. His own testimony provided proof of his association with a gang, to-wit: the
"Bloods," and his testimony further shed at least some light on the purposes and activities
of the gang. Therefore, we find the trial court did not abuse its discretion by permitting this
evidence to be received by the jury. Finding no error, point of error five is overruled. 

 Appellant's points of error having been waived or overruled seriatim, the judgment
of the trial court is affirmed.


 Patrick A. Pirtle

 Justice

Publish.
1. Appellant was arrested pursuant to a previously issued, unrelated warrant for the
offense of Unauthorized Use of a Motor Vehicle.