NO. 07-07-0473-CR, 07-07-0474-CR, 07-07-0475-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

NOVEMBER 19, 2009
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â ______________________________

CALVIN JARROD HESTER, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_________________________________

FROM THE 108TH DISTRICT COURT OF POTTER COUNTY;

NO. 54,995-E, 54,996-E, 54,997-E; HONORABLE ABE LOPEZ, JUDGE
_______________________________


Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.
MEMORANDUM OPINION 
Â Â Â Â Â Â Â Â Â Â Appellant Calvin Jarrod Hester was indicted for the offenses of possession of
marijuana, possession of cocaine with intent to distribute, enhanced, and possession of
methamphetamine with intent to distribute, enhanced.


 Each indictment also included a
deadly weapon notice. At trial, appellant plead guilty to each of the three charged offenses
and plead âtrueâ to the enhancements alleged in the cocaine and methamphetamine
possession indictments. Appellant elected to have the trial court decide punishment and
to decide the deadly weapon issue for each offense. 
Â Â Â Â Â Â Â Â Â Â The State presented evidence to show that Amarillo police officers executed a
search warrant at a one-bedroom house occupied by appellant and his girlfriend. Both
were present when the warrant was executed. Officers found marijuana,
methamphetamine, cocaine, and drug paraphernalia in various locations in the small
house, along with nearly $1,000 in cash. The house was equipped with video cameras
inside. Police found a .380 semi-automatic pistol with a magazine, stored in a Crown
Royal bag. The bag was in the bedroom inside a backpack located on the floor, next to a
safe and a dresser. The safe contained coins and gift cards. One drawer of the dresser
contained marijuana. The backpack also contained a homemade plastic marijuana bong.
Appellant told the police all the drugs were his, for his personal use. Both appellant and
his girlfriend were arrested.
Â Â Â Â Â Â Â Â Â Â The next day, appellantâs girlfriend placed a phone call to her mother from the Potter
County Jail, telling her the police missed a large amount of cash near the bathtub and
asking that she retrieve the cash. Police intercepted the call and executed a second
warrant, finding nearly $8,000 in cash in the bathroom of appellantâs residence, concealed
in a Crown Royal bag that appellant admitted was his.
Â Â Â Â Â Â Â Â Â Â Appellant testified at trial. Although he acknowledged the money and drugs were his,
he said the .380 pistol was not his. He testified he did not know where it came from. He
said the backpack was not his, and that it looked like âa femaleâs bag.â He said the bedroom
contained clothes belonging to another female friend, in addition to his girlfriendâs clothes. 
He further stated that Manuel Campbell, referred to in the record as a âknown drug dealer,â
stayed at the house occasionally and was there just before the police arrived, cooking crack
cocaine. Appellantâs testimony also suggested Campbell was angry with him and had
reasons to âgetâ appellant.
Â Â Â Â Â Â Â Â Â Â After hearing the evidence presented, the judge found it sufficient to show appellant
used the pistol to facilitate his possession and distribution of contraband and entered a
deadly weapon finding for each offense.


 On appeal, through six issues, appellant
challenges the legal and factual sufficiency of the evidence to support the deadly weapon
finding in each cause. We affirm.
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â AnalysisÂ Â Â Â Â Â Â Â Â Â By appellantâs six issues, he contends the evidence presented did not show that the
gun was his, that it was in close proximity to drugs, that he was the sole occupant of the
house, or that other evidence directly linked him to the gun. 
Evidentiary Sufficiency Supporting Deadly Weapon FindingÂ 
Â Â Â Â Â Â Â Â Â Â To review evidence for legal sufficiency, we must view the evidence in the light most
favorable to the verdict and determine if a rational trier of fact could have found the essential
elements of the offense beyond a reasonable doubt. See Narvaiz v. State, 840 S.W.2d 415,
423 (Tex.Crim.App.1992), cert. denied, 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791
(1993) citing Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560
(1979).
Â Â Â Â Â Â Â Â Â Â A factual sufficiency review requires us to view all of the evidence in a neutral light
and ask whether the jury was rationally justified in finding guilt (or an affirmative finding)
beyond a reasonable doubt. Watson v. State, 204 S.W.3d 404, 415 (Tex.Crim.App. 2006). 
We apply the same analysis to evidence supporting an affirmative deadly weapon finding. 
See Mendez v. State, No. 01-07-00680-CR, 2008 WL 5263415, *2 (Tex.App.âHouston [1st
Dist.] Dec. 18, 2008, no pet.) (mem. op., not designated for publication) (conducting
sufficiency review of evidence supporting deadly weapon finding). Evidence is factually
insufficient when the evidence supporting the conviction is so weak that the verdict seems
clearly wrong and manifestly unjust, or the evidence supporting the conviction is outweighed
by the great weight and preponderance of the contrary evidence so as to render the verdict
clearly wrong and manifestly unjust. Grotti v. State, 273 S.W.3d 273, 283 (Tex.Crim.App.
2008); Roberts v. State, 220 S.W.3d 521, 524 (Tex.Crim.App. 2007); Sanchez v. State, 243
S.W.3d 57, 72 (Tex.App.âHouston [1st Dist.] 2007, pet. refâd). Our evaluation should not
intrude upon the fact finder's role as the sole judge of the weight and credibility given to any
witness's testimony. See Fuentes v. State, 991 S.W.2d 267, 271 (Tex.Crim.App.1999). The
weight to be given contradictory testimonial evidence is within the sole province of the
fact-finder. See Johnson v. State, 23 S.W.3d 1, 7 (Tex.Crim.App. 2000); Cain v. State, 958
S.W.2d 404, 408-09 (Tex.Crim.App. 1997). In conducting a factual-sufficiency review, we
must discuss the evidence that, according to the appellant, most undermines the trial court's
findings. See Sims v. State, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003).
Â Â Â Â Â Â Â Â Â Â An affirmative deadly weapon finding may be made when the State establishes, inter
alia, (1) that a deadly weapon was used or exhibited during the commission of a felony
offense or (2) that the defendant was a party to the offense and knew that a deadly weapon
would be used or exhibited.


 Tex. Code Crim. Proc. Ann. art. 42.12, Â§ 3g(a)(2) (Vernon Supp.
2008). Any employment of a firearm or other deadly weapon, even its simple possession, to
facilitate the commission of another offense constitutes a "use" of the weapon. Patterson v.
State, 769 S.W.2d 938, 941 (Tex.Crim.App.1989).
Â Â Â Â Â Â Â Â Â Â In Patterson, officers executing a search warrant found the defendant sitting on a
couch near a table on which methamphetamine was located. Id. at 939. A pistol was on the
couch beside the defendant's leg. Id. The court held that the evidence supported a finding
that the defendant used the pistol to facilitate his possession of the methamphetamine. Id.
at 942. In Gale v. State, twenty pounds of marihuana, several unloaded firearms, and
ammunition for those firearms were found in the bedroom closet of the defendant's house.
Gale v. State, 998 S.W.2d 221, 223 (Tex.Crim.App.1999). The court held that the evidence
supported a finding that the defendant used the weapons to facilitate his possession of the
marijuana. Id. at 226. In Coleman v. State, drugs and drug paraphernalia were found
throughout the defendant's residence. Coleman v. State, 145 S.W.3d 649, 650-51
(Tex.Crim.App. 2004). In a bedroom, officers found a pistol, a rifle, and a safe containing
bottles of PCP and a large amount of money. Id. at 651. The court held that a rational trier
of fact could find that the defendant used the firearms to facilitate his possession and
distribution of the drugs. Id. at 655. In Wynn v. State, the court reversed a deadly weapon
finding because the defendant was charged as a party to the offense and the evidence
showed he was not in the house with the drugs and guns, he was not the only occupant of
the house, the owner of the guns was not determined, and no guns or drugs were found in
the only room connected with the defendant. Wynn v. State, 847 S.W.2d 357, 360-61
(Tex.App.âHouston [1st Dist.] 1993), affâd, 864 S.W.2d 539 (Tex.Crim.App. 1993).
Â Â Â Â Â Â Â Â Â Â Courts have recognized that it is common for narcotics dealers to possess firearms for
the purpose of protecting themselves because they possess large amounts of drugs and
cash. See, e.g., Moreno v. State, 978 S.W.2d 285, 289 (Tex.App.âFort Worth 1998, no pet.).
See also Wilson v. State, 132 S.W.3d 695, 698 (Tex.App.âAmarillo 2004, pet. refâd)
(recognizing it is ârather settledâ that weapons are associated with the drug trade). The Court
of Criminal Appeals has noted that a firearm is âusedâ during the commission of the felony
offense of possessing contraband in the sense that the firearm protects and facilitates the
care, custody and management of the contraband. Gale, 998 S.W.2d at 224. See also
Dimas v. State, 987 S.W.2d 152, 154-55 (Tex.App.âFort Worth 1999, pet. refâd) (narcotics
supervisor testified it was customary for drug dealers to have firearms and âuseâ them to
protect themselves, their drugs, and their money). 
Â Â Â Â Â Â Â Â Â Â Appellant argues his case is distinguishable from Patterson, and is more similar to
Wynn. He points to evidence showing he was not the only occupant of the house, and that
his girlfriend knew the location of the $8000 hidden in the bathroom. But the evidence shows
appellant was the primary occupant of the small house. Among the items police found there
was a rent receipt in appellantâs name. Appellant testified his relationship with his girlfriend
was of long standing, and testified she, like appellant, sold marijuana. Neither her presence
in the house nor her knowledge of the hidden cash weakens the incriminating inferences
properly drawn from the presence of the pistol in the bedroom. See also Charles v. State, 915
S.W.2d 238, 241 (Tex.App.âBeaumont 1996, pet. ref'd) (also distinguishing Wynn). 
Â Â Â Â Â Â Â Â Â Â Appellant also points out the evidence of the locations at which the different drugs were
found in the house is not specific, and argues there is thus no evidence the pistol and the
drugs were found in close proximity. We disagree. Appellant testified the marijuana blunts
were in the dresser drawer, and other evidence also shows marijuana in the bedroom. 
Appellant also testified powder cocaine and additional marijuana were found in the refrigerator
in the kitchen. While the pistol was not in the same container as any of the drugs, it was found
very near the dresser. Further, the bedroom and the kitchen of the house were immediately
adjacent, so the pistol was within feet of the drugs located there. 
Â Â Â Â Â Â Â Â Â Â Citing Wynn, appellant also argues there is no evidence his fingerprints were found on
the gun or in the room where it was found, others had access to the house and no evidence
shows he owned the gun. Appellant is correct the record contains no fingerprint evidence. 
But fingerprint evidence was unnecessary to establish that appellant lived in the one-bedroom
house, that the room in which the pistol was found was his bedroom, and that the backpack
containing the pistol was on the floor along the wall between the bedroom and the bathroom,
covered by a blanket. Appellant testified to those facts. Appellant denied the gun was his, but
it was in his bedroom among other items he acknowledged were his, and the trial court was
not required to accept his denial. See Cain, 958 S.W.2d at 408-09.
Â Â Â Â Â Â Â Â Â Â By his guilty plea, appellant admitted he possessed the cocaine and methamphetamine
with the intent to distribute it. He also plead guilty to possession of marijuana and testified he
sold marijuana blunts, and âa block of weed with a whole bunch of rolled up bluntsâ were in the
bedroom dresser. The gun was found inside the nearby backpack in a Crown Royal bag, and
appellant acknowledged ownership of the $8000 cash found in another stashed Crown Royal
bag. Based on the standard discussed in Patterson, 769 S.W.2d at 941, the fact-finder could,
from the evidence it heard, infer that appellant was in possession of the gun found in his
bedroom and it was used to protect and facilitate his possession of drugs. See Hooper v.
State, 214 S.W.3d 9, 15 (Tex.Crim.App. 2007) (discussing permissible inferences). The nature
of the weapon supports that conclusion. See Coleman, 145 S.W.3d at 655 (Cochran, J.,
concurring). 
Â Â Â Â Â Â Â Â Â Â Viewing all the evidence in light most favorable to the judgeâs verdict, we find that the
evidence is sufficient to allow the fact finder to determine beyond a reasonable doubt that
appellant possessed the weapon and used it to facilitate possession and intended distribution
of marijuana, cocaine, and methamphetamine. Accordingly, we find the evidence legally
sufficient to support the trial courtâs finding that appellant used a deadly weapon during the
commission of the three drug offenses. Appellantâs first three issues are overruled.
Â Â Â Â Â Â Â Â Â Â On the same evidence, we find the evidence is also factually sufficient to support the
trial courtâs affirmative deadly weapon findings. Appellant testified that his girlfriend and
Campbell had access to his home, and effectively argues the gun could have belonged to
either of them. As noted, he also testified Campbell was out to âgetâ him. Viewing the
evidence in a neutral light, we find that favoring the findings is not so weak, nor the contrary
evidence appellant emphasizes so strong, as to make the trial courtâs findings clearly wrong
or manifestly unjust. Accordingly, we hold that the evidence is factually sufficient to support
the finding that appellant used a deadly weapon during the commission of the three narcotics
offenses. We overrule appellantâs fourth, fifth and sixth issues.
Â Â Â Â Â Â Â Â Â Â Having overruled appellantâs issues, we affirm the trial courtâs judgment.
Â 
Â 
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â James T. Campbell

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice

Â 
Â 
Â 

Â 
Do not publish.

Â 



"sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 letter-spacing:.75pt;
 font-style:italic;}
span.QuoteChar
 {mso-style-name:"Quote Char";
 mso-style-priority:29;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Quote;
 color:black;
 font-style:italic;}
span.IntenseQuoteChar
 {mso-style-name:"Intense Quote Char";
 mso-style-priority:30;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Intense Quote";
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
p.NewDocument, li.NewDocument, div.NewDocument
 {mso-style-name:"New Document";
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
span.BalloonTextChar
 {mso-style-name:"Balloon Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Balloon Text";
 mso-ansi-font-size:8.0pt;
 mso-bidi-font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-ascii-font-family:Tahoma;
 mso-hansi-font-family:Tahoma;
 mso-bidi-font-family:Tahoma;
 mso-bidi-language:EN-US;}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.EndnoteTextChar
 {mso-style-name:"Endnote Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Endnote Text";
 mso-bidi-language:EN-US;}
span.FootnoteTextChar
 {mso-style-name:"Footnote Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Footnote Text";
 mso-bidi-language:EN-US;}
span.GramE
 {mso-style-name:"";
 mso-gram-e:yes;}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:Arial;
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:Arial;}
 /* Page Definitions */
 @page
 {mso-footnote-separator:url("07-09-0009-CR%20%20Opinion_files/header.htm") fs;
 mso-footnote-continuation-separator:url("07-09-0009-CR%20%20Opinion_files/header.htm") fcs;
 mso-endnote-separator:url("07-09-0009-CR%20%20Opinion_files/header.htm") es;
 mso-endnote-continuation-separator:url("07-09-0009-CR%20%20Opinion_files/header.htm") ecs;}
@page Section1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:.5in;
 mso-footer-margin:.5in;
 mso-title-page:yes;
 mso-footer:url("07-09-0009-CR%20%20Opinion_files/header.htm") f1;
 mso-paper-source:0;}
div.Section1
 {page:Section1;}
-->








NO. 07-09-0009-CR

NO. 07-09-0010-CR

Â 

IN THE COURT OF APPEALS

Â 

FOR THE
SEVENTH DISTRICT OF TEXAS

Â 

AT
AMARILLO

Â 

PANEL C 

Â 

 MAY 20, 2010



Â 

Â 



Â 

Â 

CHRISTOPHER DEMONT SMITH, APPELLANT

Â 

v.

Â 

THE STATE OF TEXAS, APPELLEE 



Â 

Â 



Â 

Â FROM THE 47TH DISTRICT COURT OF POTTER
COUNTY;

Â 

NOS. 57,392-A & 57,393-A; HONORABLE HAL MINER, JUDGE



Â 

Â 



Â 

Before QUINN,
C.J., and HANCOCK and PIRTLE, JJ.

Â 

Â 

MEMORANDUM OPINION

Â 

Â Â Â Â Â Â Â Â Â Â Â  Appellant, Christopher Demont Smith,
was convicted by a jury of one count of indecency with a child[1]
and three counts of aggravated sexual assault of a child[2]
and sentenced to four periods of confinement.[3]Â  In addition to the periods of incarceration
ordered, each judgment ordered Appellant "to pay
all fines, court costs, and restitution as indicated above."Â  In each case, the judgment was blank as to
"Court Costs."Â  By six issues,
Appellant contests: (1) the legal sufficiency of the evidence; (2) the factual
sufficiency of the evidence of indecency with a child; and (3) aggravated
sexual assault; (4) whether the trial court violated Appellant's Sixth
Amendment right to confrontation; and, (5) & (6) the trial court's
assessment of court-appointed attorneyÂs fees.Â 
We modify the trial court's judgment in Cause No. 57,392-A to clarify
that payment of $5,000 in court-appointed attorney's fees is not a part of the
court costs ordered in this case and affirm the judgment as modified.Â  The judgment in Cause No. 57,393-A is
affirmed. 

Â Â Â Â Â Â Â Â Â Â Â  Issue One -- Legal
Sufficiency of the Evidence

Â Â Â Â Â Â Â Â Â Â Â  Appellant was charged with sexually
abusing S.N.B. at a time when she was five years old.Â  Appellant contends the lack of physical
evidence of sexual abuse during an examination of S.N.B. by Dr. Rebecca Hough,
and the subsequent appearance of physical evidence of sexual abuse at a later
examination, when coupled with his lack of access to the child during that
intervening period, conclusively proves that any sexual abuse to the child was
perpetrated by someone other than him.

Â Â Â Â Â Â Â Â Â Â Â  A.Â Â Â Â Â Â Â  Standard
of Review

Â Â Â Â Â Â Â Â Â Â Â  When conducting a legal sufficiency review of the
evidence to support a criminal conviction, we view the evidence in the light
most favorable to the verdict and determine whether any rational trier of fact
could have found the essential elements of the offense beyond a reasonable
doubt.Â  Jackson v.
Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Drichas
v. State, 175 S.W.3d 795, 798 (Tex.Crim.App. 2005).Â  We do not resolve any conflict of fact, weigh
any evidence, or evaluate the credibility of any witnesses, as this is the function
of the trier of fact.Â  See Dewberry v.
State, 4 S.W.3d 735, 740 (Tex.Crim.App.
1999).Â  Instead, we determine whether
both the explicit and implicit findings of the trier of fact are rational by
viewing all the evidence admitted at trial in the light most favorable to the
adjudication.Â  Adelman
v. State, 828 S.W.2d 418, 422 (Tex.Crim.App. 1992).Â  In so doing, we resolve any inconsistencies
in the evidence in favor of the adjudication.Â 
Matson v. State, 819 S.W.2d 839, 843
(Tex.Crim.App. 1991).

Â Â Â Â Â Â Â Â Â Â Â  B.Â Â Â Â Â Â Â  Dr.
Hough's Testimony

Â Â Â Â Â Â Â Â Â Â Â  Dr. Hough testified she first saw
S.N.B. on October 2, 2007, for the purpose of determining whether S.N.B. had a
urinary tract infection.Â  Dr. Hough
testified S.N.B.'s physical examination was limited to checking her heart and
lungs. Â She did not testify to any
examination of S.N.B.'s genitalia.

Â Â Â Â Â Â Â Â Â Â Â  At
a second visit on October 19, 2007, Dr. Hough examined S.N.B. to determine why she
continued to wet her pants.Â  During this
examination, Dr. Hough examined S.N.B.'s vaginal area.Â  She found evidence of sexual abuse, i.e.,
bruising, blister-type lesions, and hardened tissue.Â  Dr. Hough testified the hardened mass of
tissue indicated damage over time or chronic damage.Â  When Dr. Hough asked S.N.B. whether anyone
touched her inappropriately, S.N.B. named Appellant.Â  S.N.B. also told Dr. Hough that Appellant
"put where he pees in where she pees," and, "[w]hen she told him
no, he hit her, and he's done this many times."Â  Dr. Hough was not asked, and did not offer,
any opinion regarding when S.N.B. might have suffered the trauma she described.

Â Â Â Â Â Â Â Â Â Â Â  Having
reviewed the entire record, we find no evidence indicating that the trauma
discovered by Dr. Hough during the second examination occurred exclusively between
the time she first examined S.N.B. and the second examination.Â  Â Furthermore,
even if Dr. Hough's testimony established that S.N.B. was sexually assaulted
during that period, that fact does not mutually exclude the possibility that
Appellant assaulted her during some other period. The evidence does show that
S.N.B. named Appellant in outcries of sexual abuse made to Dr. Hough, Kim
Hardy--her grandmother, and Becky O'Neal, a Sexual Assault Nurse Examiner, who also
found evidence of sexual abuse when she examined S.N.B.Â  This evidence is legally sufficient to
support the jury's verdict.Â  See Castillo v. State, 913 S.W.2d 529,
535 n.3 (Tex.Crim.App. 1995); Rodriguez
v. State, 955 S.W.2d 171, 174 (Tex.App.--Amarillo 1997, no pet.).Â  See
also Coronado v. State, No. 07-08-0496-CR, 2010 Tex. App. LEXIS 2401, at *9
(Tex.App.--Amarillo March 31, 2010, no pet. h.). Â Accordingly, we overrule Appellant's first
issue. 

Â Â Â Â Â Â Â Â Â Â Â  




Issues Two and Three -- Factual Insufficiency

Â Â Â Â Â Â Â Â Â Â Â  A.Â Â Â Â Â Â Â  Standard of Review

Â Â Â Â Â Â Â Â Â Â Â  When conducting a factual sufficiency
review, we examine all the evidence in a neutral light and determine whether
the trier of fact was rationally justified in finding guilt beyond a reasonable
doubt.Â  Roberts v. State, 220 S.W.3d 521, 524 (Tex.Crim.App. 2007), cert. denied, 552 U.S. 920, 128 S.Ct.
282, 169 L.Ed.2d 206 (2007); Watson v.
State, 204 S.W.3d 404, 415 (Tex.Crim.App. 2006).Â  We give deference to the fact finder's
determination when supported by the record, and cannot reverse a conviction
unless we find some objective basis in the record demonstrating that the great
weight and preponderance of the evidence contradicts the verdict.Â  Watson,
204 S.W.3d at 417.Â 
The criminal verdict will be set aside "only if the evidence is so
weak that the verdict is clearly wrong and manifestly unjust, or the contrary
evidence so strong that the standard of proof beyond a reasonable doubt could
not have been met."Â  Garza v. State, 213
S.W.3d 338, 343 (Tex.Crim.App. 2007).Â 
In addition, the fact finder is entitled to judge the credibility of the
witnesses and may choose to believe all, or some, or none of the testimony
presented.Â  Chambers v. State, 805 S.W.2d 459, 461
(Tex.Crim.App. 1991).

Additionally, as directed by the
Texas Court of Criminal Appeals, when conducting a factual sufficiency review,
we must include a discussion of the most important and relevant evidence that
supports the appellant's complaint on appeal.Â 
Sims v. State, 99 S.W.3d 600, 603
(Tex.Crim.App. 2003).Â  This does
not, however, mean that we are required to discuss all evidence admitted at trial.Â 
See id.Â  See also Roberts
v. State, 221 S.W.3d 659, 665 (Tex.Crim.App.
2007).Â  In that
respect, Appellant contends the State's evidence of indecency with a child is
factually insufficient because:Â  (1)
S.N.B.'s testimony at trial was inconsistent; (2) neither Dr. Hough nor the
SANE nurse swabbed S.N.B. for DNA evidence; (3) Hardy's testimony was biased
against Appellant because of his race; and (4) the police did not interview
S.N.B.'s grandparents.Â  

Â Â Â Â Â Â Â Â Â Â Â  B.Â Â Â Â Â Â Â  Indecency with a Child

Â Â Â Â Â Â Â Â Â Â Â  A
person commits the offense of indecency with a child if a person engages in
sexual contact with the child or causes the child to engage in sexual
contact.Â  Tex. Penal Code Ann. Â§ 21.11(a)(1) (Vernon Supp. 2009).Â 
The term "sexual contact" means any of the following acts if
committed with the intent to arouse or gratify the sexual desire of any person;
"any touching by a person, including touching through clothing, of the
anus, breast, or any part of the genitals of a child," id. at Â§
21.11(c)(1), or "any
touching of any part of the body of a child, including touching through
clothing, with the anus, breast, or any part of the genitals of a
person."Â  Id. at Â§ 21.11(c)(2).

Â Â Â Â Â Â Â Â Â Â Â  In
addition to Dr. Hough's testimony described above, Hardy's and S.N.B.'s testimony
corroborated Dr. Hough's account of her outcry.Â 
S.N.B. also testified Appellant touched her in her "special
place" and "it hurt."Â 
O'Neal, the nurse who conducted S.N.B.'s SANE examination, testified
S.N.B. told her that Appellant "touch[ed] her pee
pee," "put his mouth on [her] pee pee," and "put a nail in
[her] butt and put a seed in her butt."Â 
O'Neal testified S.N.B.'s SANE examination showed evidence of sexual
abuse in her vaginal area and her anus showed immediate dilation, indicating
repeated penetration.Â  Dr. Hough's
examination corroborated the results of O'Neal's examination with regard to
S.N.B.'s vaginal area.Â  

Â Â Â Â Â Â Â Â Â Â Â  Any inconsistency between S.N.B.'s
prior outcries and her testimony at trial went to her credibility.Â  Based upon the evidence recounted above, the
jury could have reasonably believed that Appellant engaged in sexual contact
with S.N.B. even though some of S.N.B.'s trial testimony was inconsistent with
her earlier out-of-court statements and her in-court testimony.Â  See,
e.g., In re A.B., 133 S.W.3d 869, 873-74 (Tex.App.--Dallas 2004, no pet.); Washington v. State, 127 S.W.3d 197, 204
(Tex.App.--Houston [1st Dist.] 2003, pet. dism'd).Â  Moreover, our evaluation of the evidence
"should not substantially intrude upon the jury's role as the sole judge
of the weight and credibility of witness testimony."Â  Jones
v. State, 944 S.W.2d 642, 648 (Tex.Crim.App. 1996), cert. denied, 522 U.S. 832, 118 S.Ct. 100, 39 L.Ed.2d 54
(1997).Â  Accordingly, to the extent
Appellant claims the evidence is factually insufficient because S.N.B.'s prior
statements were not credible, we hold that the evidence in support of the
jury's verdict was not so weak as to render the verdict clearly wrong or
manifestly unjust.

Â Â Â Â Â Â Â Â Â Â Â  Appellant
does not cite any case law or other authority in support of his contention that
evidence of indecency with a child is factually insufficient in the absence of
the victim being swabbed for DNA.Â  Thus,
this contention was insufficiently briefed, and therefore, waived.Â  Tex. R. App. P. 38.1(h).Â  See Cardenas v. State, 30 S.W.3d 384, 393 (Tex.Crim.App. 2000). 

Â Â Â Â Â Â Â Â Â Â Â  Neither
does Appellant cite any case law or other authority in support of his
contention that evidence of indecency with a child is factually insufficient in
the absence of the police interviewing the victim's guardian or
grandparents.Â  This contention was also
insufficiently briefed, and therefore, waived.Â 
Tex. R. App. P. 38.1(h).Â  See Cardenas, 30
S.W.3d at 393. 

Â Â Â Â Â Â Â Â Â Â Â  Furthermore,
to the extent that this portion of Appellant's argument is that the evidence is
insufficient because S.N.B.'s grandparents were racially biased, whether a
witness's testimony is racially motivated goes to the credibility of the
witness and the weight to be given to their testimony.Â  The jury is the "exclusive judge of the
credibility of witnesses," and the reconciliation of conflicts in the
testimony is also within the "exclusive province of the jury.ÂÂ  See Tex. Code Crim. Proc.
Ann. art. 36.13 (Vernon 2007); id. at art. 38.04
(Vernon 1979); Jones, 944 S.W.2d at
647.Â  By rendering a guilty verdict,
the jury apparently chose to accept the truthfulness of Hardy's testimony that S.N.B.'s
behavior markedly changed after she visited Appellant and his wife, as well her
account of S.N.B.'s outcry to Dr. Hough. Â Washington, 127 S.W.3d
at 204.Â  The jury could have also believed
Hardy's testimony that, even though she "didn't like the idea" of her
daughter being with a black man, she "just accepted it and went about
[her] business."

Â Â Â Â Â Â Â Â Â Â Â  Accordingly, we find the State's evidence in support
of the jury's verdict of guilty as to the offense of indecency with a child was
not so weak as to render the verdict clearly wrong or manifestly unjust.Â  Appellant's second issue is overruled.

Â Â Â Â Â Â Â Â Â Â Â  




C.Â Â Â Â Â Â Â  Aggravated Sexual Assault 

Â Â Â Â Â Â Â Â Â Â Â  Appellant contends the State's
evidence of aggravated sexual assault at trial was also factually insufficient
because:Â  (1) S.N.B.'s testimony was
inconsistent; (2) terms used by S.N.B. in her outcry were unexplained; and (3)
S.N.B.'s outcry to Dr. Hough was made while Hardy was in the room.

Â Â Â Â Â Â Â Â Â Â Â  A
person commits the offense of aggravated sexual assault if the person,
intentionally or knowingly, causes the penetration of the anus or sexual organ
of a child, younger than 14 years of age, by any means, or causes the sexual
organ of a child to contact or penetrate the mouth, anus, or sexual organ of
another person, including the actor.Â 
Tex. Penal Code Ann. Â§ 22.021(a)(1)(B) &
(a)(2)(B) (Vernon Supp. 2009).

Â Â Â Â Â Â Â Â Â Â Â  S.N.B.'s
outcry statement to Dr. Hough is described above.Â  Hardy's and S.N.B.'s testimony corroborated
Dr. Hough's account of S.N.B.'s outcry, O'Neal's testimony supported S.N.B.'s
version of the events, and Dr. Hough's examination corroborated the results of
O'Neal's SANE examination with regard to the existence of trauma to S.N.B.'s
vaginal area.Â  Any inconsistency between
S.N.B.'s prior outcries and her testimony at trial went to her
credibility.Â  Based upon the evidence
recounted above, the jury could reasonably have believed that Appellant
committed the offense of aggravated sexual assault.Â  See, e.g., In re A.B., 133 S.W.3d at 873-74; Washington, 127 S.W.3d at 204.Â  The fact that S.B.N.'s testimony was
inconsistent does not make it factually insufficient.

Â Â Â Â Â Â Â Â Â Â Â  Appellant
next contends the evidence was factually insufficient because there were terms
in S.N.B.'s outcry to O'Neal that were unexplained by S.N.B.Â  In sexual abuse cases, a child victim may
testify using language appropriate for his/her age to describe the sexual
assault because "one cannot expect the child victims of violent crimes to
testify with the same clarity and ability as is expected of mature and capable
adults;" Villalon v. State, 791
S.W.2d 130, 134 (Tex.Crim.App. 1990) (en
banc), and a child victim's outcry statement alone can be sufficient to
support a conviction for aggravated assault.Â 
Coronado, 2010 Tex. App. LEXIS
2401 at *9; Kimberlin v. State, 877
S.W.2d 828, 831 (Tex.App.--Fort Worth 1994, pet. ref'd) (citing Rodriguez v. State, 819 S.W.2d 871, 873
(Tex.Crim.App. 1991) (en banc).Â  Further, putting aside the terms contested by
Appellant, there remains sufficient evidence upon which a jury could reasonably
base its verdict.Â  

Â Â Â Â Â Â Â Â Â Â Â  Finally,
Appellant attempts to make a connection between S.N.B.'s outcry to Dr. Hough, made
while Hardy was in the room, and S.N.B.'s testimony that "Momma Kim
[Hardy] told her what to say" and she "[didn't] know what [Hardy]
told her."Â  Whether this testimony
affected the verdict was a matter left to the jury's sound discretion.Â  The fact finder is entitled to make these decisions
and may choose to believe all, some, or none of the testimony presented.Â  Chambers,
805 S.W.2d at 461.Â 
By rendering a guilty verdict, the jury apparently chose to accept the
truthfulness of S.N.B.'s testimony.Â  Washington, 127 S.W.3d
at 204.Â Â Â  

Â Â Â Â Â Â Â Â Â Â Â  Accordingly,
we find the State's evidence in support of the jury's verdict of guilty of
aggravated sexual assault of a child was not so weak as to render the verdict
clearly wrong or manifestly unjust.Â 
Appellant's third issue is overruled.




Issue Four -- Sixth Amendment

Â Â Â Â Â Â Â Â Â Â Â  Appellant next contends the trial
court violated his Sixth Amendment right to confront his accuser by permitting
the State's prosecutor to stand between S.N.B. and Appellant during a portion
of her testimony.Â  During the State's
direct examination of S.N.B., the State's attorney requested permission from
the trial court to stand between S.N.B. and Appellant.Â  The State's attorney stated that he did
"not want to block [Appellant's] view but [S.N.B.] keeps looking over at
him and I'm concerned now. . . ."Â 
The trial court granted the State's request over Appellant's Sixth
Amendment objection based on Crawford.[4]

Â Â Â Â Â Â Â Â Â Â Â  The
Sixth Amendment provides, in relevant part, that "[i]n all criminal
prosecutions, the accused shall enjoy the right . . . to be confronted with the
witnesses against him.Â  U.S. Const. amend. VI.[5]Â  The Confrontation Clause reflects a
preference for face-to-face confrontation at trial, but that preference must
occasionally give way to considerations of public policy and the necessities of
the case.Â  Maryland v. Craig, 497 U.S. 845, 849, 110 S.Ct. 3157, 111 L.Ed.2d
666 (1990); Coronado, 2010 Tex. App.
LEXIS 2401 at *9 (construing the public policy considerations of article
38.071, section 2(b) of the Texas Code of Criminal Procedure, as an appropriate
constitutional accommodation in lieu of face-to-face confrontation).Â  The United States Supreme Court has stated
that an exception to the right of face-to-face confrontation exists when the
State shows that a special procedure is necessary to protect child witnesses
from the trauma of testifying in court.Â  See Craig, 497 U.S. at 855.[6]

Â Â Â Â Â Â Â Â Â Â Â  Here,
S.N.B. appeared at trial and was subject to cross-examination.Â  Appellant does not assert that she was hidden
from the jury's view or from his counsel's view at any time while she was
testifying.Â  Rather, she testified under
oath in view of the jury while Appellant's counsel was given an unfettered
opportunity to cross-examine S.N.B. while Appellant was in her full view.Â  Accordingly, we cannot say Appellant was
denied his constitutional right to confrontation by the limited accommodation
made during the State's direct examination.Â 
See Moore v. State, 169 S.W.3d 467, 470 n.8 (Tex.App.--Texarkana 2005,
pet. ref'd) ("[W]hen a witness appears at trial and is subject to
cross-examination, the Confrontation Clause is not violated.").Â  See also
Palmer v. State, 716 S.W.2d 174, 176-77 (Tex.App.--Houston [14th Dist.]
1986, pet. ref'd), motion for reh'g
denied, 741 S.W.2d 451 (Tex.Crim.App. 1987) (per curiam).Â  Appellant's
fourth issue is overruled.

Â Â Â Â Â Â Â Â Â Â Â  




Issue Five and Six -- Court-Appointed AttorneyÂs Fees

Â Â Â Â Â Â Â Â Â Â Â  By issues five and six, Appellant
makes a two prong attack on what he contends is the erroneous assessment of
attorney's fees in this case.Â  The first
prong of Appellant's attack is that a trial court may not order a criminal
defendant to repay the State for the costs of a court-appointed attorney
without making a determination, based upon competent evidence, that the
defendant has financial resources that enable him to offset in part or in whole
the costs of legal services provided.Â  In
support of this prong of his attack, Appellant relies heavily upon this Court's
decision in Mayer v. State, 274
S.W.3d 898 (Tex. App.--Amarillo 2008) affÂd,
No. PD-0069-09, 2010 Tex.Crim.App.
LEXIS 100 (Tex.Crim.App. March 24, 2010). The second prong of Appellant's
attack is that the trial court erred because it did not orally pronounce the
assessment of attorneyÂs fees at sentencing, nor did it declare the precise
amount of attorney's fees in its written judgment.Â  In support of this prong of his attack,
Appellant relies upon the decision in Burke
v. State, 261 S.W.3d 438, 439 (Tex.App.--Austin 2008, no pet.) (holding that a judgment assessing an undetermined amount of
attorney's fees was error where the trial court did not order the Defendant to
pay a specific amount of attorney's fees either in its oral pronouncement or
its written judgment).Â Â Â  In response,
the State does not address the second prong; but, instead, urges this Court to
reconsider its judgment and opinion in Mayer.[7]

Â Â Â Â Â Â Â Â Â Â Â  




A.Â Â Â Â Â Â Â  Reimbursement of
Attorney's Fees

Â Â Â Â Â Â Â Â Â Â Â  Appellant
contends the trial court erred by ordering him to repay the State for the costs
of his court-appointed attorney.Â  Under
article 26.05 of the Texas Code of Criminal Procedure, a trial court has
authority to order reimbursement of appointed attorneyÂs fees if the court determines, based upon sufficient evidence, that a defendant
has financial resources that enable him to offset, in part or in whole, the
costs of the legal services provided.Â  See Tex. Code Crim. Proc.
Ann. art. 26.05(g) (Vernon Supp. 2009).Â  The record before us does not contain a determination
or finding by the trial court that Appellant had any financial resources or was
"able to pay" the appointed attorneyÂs fees.

Â Â Â Â Â Â Â Â Â Â Â  The
record reflects that on March 26, 2008, Appellant filed an affidavit, including
relevant financial information, wherein he requested the appointment of counsel
for representation at trial.Â  On March 27,
2008, the trial court granted his request and appointed counsel.Â  Again, on December 18, 2008, Appellant filed
a Pauper's Oath on Appeal petitioning
the trial court to appoint appellate counsel on appeal, and again on January 5,
2009, the trial court determined he was entitled to that relief, ordered the
court reporter to prepare a reporter's record, and appointed appellate counsel
to assist Appellant in the presentment of his appeal.Â  Unless a material change in his financial
resources occurs, once a criminal defendant has been found to be indigent, he
is presumed to remain indigent for the remainder of the proceedings.Â  Tex. Code Crim. Proc. Ann. art.
26.04(p) (Vernon Supp. 2009).Â  Therefore, while there is no evidence of
record demonstrating a material change in Appellant's financial resources, there
was ample evidence demonstrating that, before trial and immediately following
rendition of judgment, Appellant was indigent and qualified for court-appointed
counsel.Â  

Â Â Â Â Â Â Â Â Â Â Â  Without
evidence demonstrating Appellant's financial ability to offset the costs of
legal services, any order requiring Appellant to reimburse the State for the
costs of his court-appointed attorney would be error.Â  See
Mayer v. State, No. PD-0069-09, 2010 Tex.Crim.App. LEXIS 100 (Tex.Crim.App.
March 24, 2010).Â  Accordingly,
Appellant's fifth issue is sustained.Â  

Â Â Â Â Â Â Â Â Â Â Â  B.Â Â Â Â Â Â Â  Assessment of Undetermined Amount of
Attorney's Fees

Â Â Â Â Â Â Â Â Â Â Â  The second prong of Appellant's
attack is premised on the argument that the trial court did not order Appellant
to pay a specific amount of attorney's fees, either by pronouncement at
sentencing or in the written judgment.Â  Even
though the State does not address this argument, the validity of Appellant's premise
is incorrect.Â  The judgment in question
appears to be a form customarily used by the district courts of Potter County,
Texas.Â  The introductory summary
statements contained on the first page of the judgment state:

________________________________________________________________

Fine:Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Court
Costs:Â Â Â Â Â Â Â Â Â Â Â Â Â  Restitution:Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Restitution Payable to:

N/AÂ Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  $Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  $ N/AÂ Â Â Â Â Â Â Â Â Â Â Â Â  __ Â Â Â Â Â Â  Victim__ Agency/Agent

Â 

Â Â Â Â Â Â Â Â Â Â Â  Page
two of the judgment contains the statement: "The Court Orders Defendant to pay all fines,
court costs, and restitution as indicated above."Â  (Emphasis in original).Â  Even though the judgment in question shows a
blank for court costs, the Bill of Costs contained
in the Clerk's Record indicates that Appellant was required to pay $5,000 for
court-appointed attorney's fees in Cause No. 57,392-A.Â  The Bill
of Costs in Cause No. 57,393-A does not include an amount for attorney's
fees.Â  A cost indicated on a certified Bill of Costs prepared by the District
Clerk can be collected from a criminal defendant.Â  See
generally Tex. Code Crim. Proc. Ann. art. 103.001, et seq. (Vernon 2006). Therefore,
to the extent that the judgment does order Appellant to pay court costs, we
find that it does order him to pay a definite and defined amount of attorney's
fees.Â  Appellant's sixth issue is
overruled. 

Conclusion

Â Â Â Â Â Â Â Â Â Â Â  Having
determined that the trial court erred by requiring Appellant to reimburse the
State for the costs of his court-appointed attorney, we modify the judgment in
Cause No. 57,392-A to clarify that the order to pay court costs does not
include a requirement that he pay the $5,000 in attorney's fees contained in
the Bill of Costs.Â  As modified, the trial courtÂs judgment
in Cause No. 57,392-A is affirmed.Â  The
trial courtÂs judgment in Cause No. 57,393-A is affirmed. 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Patrick
A. Pirtle

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â 
JusticeÂ  

Â 

Do not publish.











[1]See Tex. Penal Code Ann. Â§ 21.11(a)(1) Vernon Supp. 2009). 





[2]See Tex. Penal Code Ann. Â§ 22.021(a)(1)(B), (2)(B) (Vernon Supp. 2009).

Â 





[3]Appellant was originally charged with
two counts of indecency with a child in Cause No. 57,392-A, and three counts of
aggravated sexual assault of a child in Cause No. 57,393-A.Â  In Cause No.
57,392-A, the jury found Appellant guilty of count 1 and sentenced him to five
years confinement.Â  The trial court
issued an instructed verdict of not guilty as to count two.Â  In Cause No. 57,393-A, the jury found
Appellant guilty of all three counts of aggravated sexual assault and sentenced
him to sentences of thirty-five years, thirty-five years, and fifteen years
respectively.Â  The trial court ordered
that the five year sentence be served concurrent to any other period of confinement,
and that the remaining sentences be served consecutively.Â  Â Â Â Â 





[4]In
Crawford v. Washington, 541 U.S. 36,
124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court held
that in-court testimony or its functional equivalent (i.e., "material such as affidavits, custodial examinations, prior
testimony that the defendant was unable to cross-examine, or similar pre-trial
statements that declarants would reasonably expect to be used
prosecutorially") may not be used as evidence against an accused unless
the accused has an opportunity to confront and cross-examine the maker of the
statement.Â  Id. at 51.Â  





[5]This
right to confrontation was made applicable to the states by the Due Process
Clause of the Fourteenth Amendment.Â  Pointer v. Texas, 380 U.S.
400, 403, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965).





[6]The
determination of whether alternative forms of testimony are necessary should be
made on a case-by-case basis.Â  See Craig, 497 U.S. at 855.Â  Contrary to Appellant's contention, Texas
Code of Criminal Procedure article 38.071 is inapplicable here because the
article "applies only to a hearing or proceeding in which the court
determines that a child . . . would be unavailable to testify in the presence
of the defendant. . . ."Â  Tex. Code Crim. Proc. Ann. art. 38.071 Â§ 1
(Vernon Supp. 2009).Â  Here, S.N.B.
did testify in Appellant's presence.





[7]At
the time the State filed its brief it did not have the benefit of the Court of
Criminal AppealsÂs decision in Mayer v.
State, No. PD-0069-09, 2010 Tex.Crim.App. LEXIS 100 (Tex.Crim.App. March 24, 2010).