PD-0551-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 6/17/2015 12:41:44 PM
Accepted 6/17/2015 12:49:25 PM
ABEL ACOSTA
CLERK

## NO. PD-0551-15

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

# AT AUSTIN

-------------------------------------------------------------------

## NO. 14-13-00921-CR

# IN THE COURT OF APPEALS FOR THE

# FOURTEENTH DISTRICT OF TEXAS

# AT HOUSTON

-------------------------------------------------------------------

**MARQUE JAMAL COLEMAN,**          **APPELLANT**

**V.**

**THE STATE OF TEXAS,**          **APPELLEE**

-------------------------------------------------------------------

## APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

-------------------------------------------------------------------

**Danny K. Easterling**
Easterling & Easterling, P.C.
Texas Bar No. 06362100
1018 Preston, 6th Floor
Houston, TX 77002
(713)228-4441
E-mail:eaepc@swbell.net
Counsel for Appellant,
Court-appointed on appeal.

## ORAL ARGUMENT REQUESTED.

## STATEMENT REGARDING ORAL ARGUMENT

The appellant requests oral argument because of the novelty and importance of the issues presented.

## LIST OF INTERESTED PARTIES

Marque Jamal Coleman                    Appellant, Defendant in trial court

Cheryl Irvin                            Appellant's Counsel at trial
917 Franklin, Fourth Floor
Houston, TX 77002

Equator L. Turner
440 Louisiana, Suite 900
Houston, TX 77002

Danny K. Easterling                     Appellant's counsel on appeal
1018 Preston, 6th Floor
Houston, TX 77002

Devon Anderson                          Harris County District Attorney
1201 Franklin, Suite 600
Houston, TX 77002

Stuart Ladner                           Assistant District Attorneys
Gretchen Flader
Melissa Hervey

Hon. Leslie Brock Yates                 Visiting Judge, 174th District Court
                                        Harris County, Texas

# TABLE OF CONTENTS

Statement Regarding Oral Argument   i

List of Authorities   iv

Statement of the Case   1

Statement of Procedural History   2

Questions Presented   2

    1.  Did the Court of Appeals err in holding that the appellant was not entitled to the submission of a jury instruction on Theft from Person as a lesser included offense because evidence did not directly address the appellant's state of mind?

    2.  Did the Court of Appeals' err in holding that an instruction to disregard evidence sufficiently cured guilt-stage testimony indicating that Coleman had some connection with a gang?

Argument   3

    Reasons for Review of Question One   3

        A.   The Applicable Law   3

        B.   The Scintilla – or More – of Evidence   5

        C.   The Court of Appeals' Narrow View of the Standard   5

    Reasons for Review of Question Two   9

        A.   The Applicable Law   9

        B.   The Improper Revelation   11

        C.   The Inadequacy of an Instruction   12

Prayer for Relief  15

Certificate of Compliance  15

Certificate of Service  16

Appendix: Court of Appeals' Memorandum Opinion and Judgment

# LIST OF AUTHORITIES

| Cases | Page |
|---|---|
| *Allen v. State*, 513S.W.2d 556 (Tex. Crim. App. 1974) | 14 |
| *Anderson v. State*, 901 S.W.2d 946 (Tex. Crim. App. 1995) | 11 |
| *Barclay v. Florida*, 463 U.S. 939, 103 S.Ct. 3418,77 L.Ed.2d 1134 (1983) | 10 |
| *Dawson v. Delaware*, 503 U.S. 159, 112 S.Ct. 1093, 117 L.Ed.2d 309 (1992) | 10 |
| *Earls v. State*, 707 S.W.2d 82 (Tex. Crim. App. 1986) | 4 |
| *Fuller v. State*, 829 S.W.2d 191 (Tex. Crim. App. 1992) | 10-11 |
| *Hall v. State*, 225 S.W.3d 524 (Tex. Crim. App. 2007) | 3-4, 10 |
| *McKay v. State*, 707 S.W.2d 23 (Tex. Crim. App. 1985) | 11-12 |
| *Nguyen v. State*, No. 14-11-00706-CR, 2012 WL 3043063, at *3 (Tex. App.—Houston [14th Dist.] July 26, 2012, pet.ref'd) | 9 |
| *Schweinle v. State*, 915 S.W.2d 17 (Tex. Crim. App. 1996) | 4 |
| *United States v. Lemon*, 723 F.2d 922 (D.C. Cir. 1983) | 11 |
| *Wesbrook v. State*, 29 S.W.3d 103 (Tex. Crim. App. 2000) | 12 |

**Constitutional Provisions, Statutes, and Rules**

| | |
|---|---|
| TEX. CODE CRIM. PROC. Art. 37.09 | 3 |
| TEX. CONST. Art. I, §10 | 8-9 |
| TEX. PENAL CODE §6.03© | 7 |
| TEX. PENAL CODE §6.03(d) | 7 |

TEX. PENAL CODE §29.02(a)(1)    5

TEX. PENAL CODE §31.03(e)(4)(B)    4

TEX. R. APP. PROC. 66.3(b)    6-7

U.S. CONST. Amend. V    8-9

## TO THE COURT OF CRIMINAL APPEALS OF TEXAS:

COMES NOW the appellant, Marque Jamal Coleman (hereinafter "Coleman"), through the undersigned court-appointed counsel on appeal, and respectfully requests that this Court grant discretionary review of the decision in this cause by the Court of Appeals for the Fourteenth District of Texas, for reasons set forth as follows.

## STATEMENT OF THE CASE

Coleman was indicted for Robbery in Cause Number 1347307 in the 174th District Court of Harris County, Texas (CR-9).[1] A jury found Coleman guilty as charged (CR-607). At the punishment stage Coleman stated that two enhancement allegations relating to prior felony convictions were true (RR V-5). Coleman also stipulated that he had other prior convictions for diverse offenses (RR VIII, Exh. 1). The visiting trial judge, Hon. Leslie Brock Yates, assessed punishment at confinement for thirty years in the Texas Department of Criminal Justice, Correctional Institutions Division (CR-609). Coleman gave timely notice of appeal (CR-614).

On appeal Coleman presented two points of error. First he argued that the trial court judge should have instructed the jury on Theft from Person as a lesser included offense for the charged offense of Robbery. Coleman also argued that a

---

1 The clerk's record containing court documents is designated by "CR" herein. The reporter's record is designated by "RR." with Roman numerals for volume numbers. The Court of Appeals' memorandum opinion is designated by "Mem. Opin."

detective interjected error into the proceedings when she revealed that a photo of Coleman was taken from a "gang tracker database." The Court of Appeals overruled both points of error and affirmed the judgment and sentence in a memorandum opinion.

## STATEMENT OF PROCEDURAL HISTORY

The Court of Appeals rendered its decision and delivered its memorandum opinion on April 16, 2015. No motion for rehearing was filed. This Court extended the time for filing a petition for discretionary review until June 17, 2015.

## QUESTIONS PRESENTED

This petition presents two questions for review:

1. Did the Court of Appeals err in holding that the appellant was not entitled to the submission of a jury instruction on Theft from Person as a lesser included offense because evidence did not directly address the appellant's state of mind?

2. Did the Court of Appeals' err in holding that an instruction to disregard evidence sufficiently cured guilt-stage testimony indicating that Coleman had some connection with a gang?

## ARGUMENT

## REASONS FOR REVIEW OF QUESTION ONE

**Did the Court of Appeals err in holding that the appellant was not entitled to the submission of a jury instruction on Theft from Person as a lesser included offense because evidence did not directly address the appellant's state of mind?**

### A. The Applicable Law

*Hall v. State*, 225 S.W.3d 524 (Tex. Crim. App. 2007), observed that TEX. CODE CRIM. PROC. Art. 37.09 sets forth the ways in which an offense may constitute a lesser included offense of the offense charged in the indictment. An offense is a lesser included offense if:

> (1) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged;

> (2) It differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;

> (3) It differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or

> (4) It consists of an attempt to commit the offense charged or an otherwise included offense.

Under *Hall, supra* at 531, "when the greater offense may be committed in more than one manner, the manner alleged will determine the availability of lesser-included offenses. In this cause, for example, the indictment alleged that Coleman

3

caused bodily injury, rather than threatening it, so the analysis must focus on what lesser offenses might apply to that form of Robbery.

*Hall* specifically held that the determination as to whether a charged offense includes another particular offense as a lesser included offense, under the first alternative in Article 37.09, "should be made by comparing the elements of the greater offense, as the State pled it in the indictment, with the elements in the statute that defines the lesser offense." *Id.,* at 525. The controlling test is whether "the elements of the lesser offense are established by proof of the same or less than all the facts required to establish the commission of the charged offense." *Id.,* at 536. In this cause the State conceded – and the Court of Appeals held (Mem. Opin., p. 4) – that the offense of Theft from Person, under TEX. PENAL CODE §31.03(e)(4)(B), can be a lesser included offense of Robbery. This Court had so held in *Earls v. State,* 707 S.W.2d 82 (Tex. Crim. App. 1986).

That statute-based determination is the first step in a two-step analysis. The second step is to determine whether or not a lesser included offense has been raised in a particular case. The test for this second step is whether there is "some evidence which would permit a rational jury to find that if guilty, the defendant is guilty only ofthe lesser offense." *Schweinle v. State,* 915 S.W.2d 17 (Tex. Crim. App. 1996). "Anything more than a scintilla ofevidence from any source is sufficient to

4

entitle a defendant to submission of the issue." *Id.* The Court of Appeals held that this prong of the test was not met and therefore overruled the point of error.

## B. The Scintilla – or More – of Evidence

Hortensia Garza testified that she was returning home from work at around 2 a.m. on April 28 2012 (RR III- 13-14). Garza had parked her car at her apartment complex and was walking toward her apartment. As she got close to her apartment a man appeared, about only two feet from her (RR III-23). She thought he was a resident and smiled at him but did not say anything (RR III-23). As the man walked past, he tried to grab a backpack that Garza was carrying over her left shoulder (RR III-26). Garza "fought" to keep the backpack for about 30 seconds until the man "shoved" Garza in the face with the palm of his hand (RR III-28). That knocked Garza down, and the man ran off with the backpack. As a result of falling to the ground, Garza hit her head, but she did not claim any injury from that (RR III-29). Garza broke a finger as she landed on the ground (RR 111-29-30). Garza identified the appellant in court as the man who assaulted her (RR III-30).

## C. The Court of Appeals' Narrow View of the Standard

Coleman argued in the Court of Appeals that there was some evidence that he shoved Garza without having the *mens rea* required for Robbery under TEX. PENAL CODE §29.02(a)(1), *i.e.*,"intentionally, knowingly, or recklessly" causing

5

bodily injury. Coleman argued that his goal was to steal, not to hurt Garza. There was at least some indication that Garza fell, and thereby broke her finger, because of her size and weight. Garza said "I am short, but I got some weight on me. In order to knock me down, you have to push me hard."

Another indication that Coleman only intended to make a quick grab and run off to the escape vehicle with his plunder was his method of walking past and catching Garza off guard. Coleman pushed Garza instead of using the kind of fighting blows like punching, kicking, *etc.*, which would be more consistent with an intent to actually injure someone. The act of pushing may indicate a mere desire to create distance between the assailant and the victim, thus preventing hand-to-hand resistance and giving the assailant a head start in any ensuing chase.

The Court of Appeals nevertheless declined to consider testimony about the physical contact and how it led to a broken finger as evidence which might go to the question of *mens rea*, stating:

> Garza's testimony only speaks to causation, not Coleman's mental state as to whether he intended to cause Garza bodily injury.

(Mem. Opin., pp. 6-7). But did the testimony *only* have relevance to causation?

This Court is presented with an important but unsettled legal question: May the "scintilla" of evidence to show a lesser culpable mental state, and thus justify a jury instruction, consist of *indirect* or circumstantial evidence regarding actions

6

and consequences?  By effectively holding that it may not, the Court of Appeals is giving too narrow a reading to the second prong of the test for entitlement to an instruction. This is an issue worthy of this Court's examination under TEX. R. APP. PROC. 66.3(b).

Consider the difference between "recklessness" (which is the lowest of the three levels of *mens rea* for Robbery under the "causes injury" prong of the statute) and "criminal negligence." TEX. PENAL CODE §6.03(c) provides:

> A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

In the context of a Robbery prosecution based on "causing" injury, the recklessness would apply to the *result* of conduct, *i.e.* causing the particular injury suffered by the complainant. Criminal negligence, under TEX. PENAL CODE §6.03(d), is distinguishable in that the actor need not actually be "aware" of the risk. It is applicable when a reasonable person ought to be aware of the risk.

An actor's state of mind often is suggested by his specific actions and/or by the circumstances of an encounter. The State has advanced that proposition in thousands of jury arguments over the years, and that logic is well embedded in case

7

law too. Should not the same principle apply when the issue is whether another offense may be indicated? In this cause Coleman's actions do not indicate that he actually was aware that his "push and grab" theft technique was designed to cause injury. Nor does the evidence indicate that the risk that Garza could break her finger by falling was a "substantial" one in a "push and grab" theft.

Thus some of the evidence pointed more towards criminal negligence than it pointed towards recklessness with respect to physical injury. That should be enough to justify a lesser included offense instruction, for the only way to raise the question of a lesser *mens rea* and actually rule out a greater *mens rea* would be for the defendant to testify. Surely the second prong of the test should not be pushed to the point where it virtually requires a defendant to testify, since that would undermine constitutional rights under U.S. CONST. Amend. V and TEX. CONST. Art. I, §10.

Coleman realizes that it could be argued that, if the *mens rea* of recklessness is doubtful, the trial court should simply instruct that reasonable doubt on the *mens rea* requires acquittal. In practice, however, it is likely that a jury will not completely acquit a defendant who is shown to have committed at least a state jail felony offense. Furthermore, for defense counsel to have to argue for a complete acquittal, based on a lack of clarity as to whether a defendant was reckless or only

8

criminally negligent, would itself be perilous to the Fifth Amendment privilege (and the similar privilege under Article I, Section 10), for the jury would know that only one person could give testimony making such a fine distinction.

In fact, a case cited by the Court of Appeals suggests that even abandoning constitutional protections might be to no avail in obtaining an instruction on the theory of a lesser offense. A memorandum opinion, *Nguyen v. State*, No. 14-11-00706-CR, 2012 WL 3043063, at *3 (Tex. App.—Houston [14th Dist.] July 26, 2012, pet.ref'd) was cited as "holding that [the] defendant was not entitled to a lesser included offense instruction because the evidence showed that he acted intentionally, despite claiming that 'he never intended to harm the complainant.'"

Finally, there is room here even for a more fundamental consideration of whether the "guilty only" element of the standard needs to be reconsidered, or at least not applied to charge requests centered on *mens rea*. In the long run that would simplify the law, aid jury deliberations, and avoid some appellate litigation, all at the relatively small cost of adding a page to some jury charges. Whatever the right solution is, the first step is to grant discretionary review.

## REASONS FOR REVIEW OF QUESTION TWO

**Did the Court of Appeals err in holding that an instruction to disregard evidence sufficiently cured guilt-stage testimony indicating that Coleman had some connection with a gang?**

### A. Applicable Law

It is a cardinal principle of criminal law that a felony defendant should be tried for the offense charged in the indictment. *Hall, supra* at 532 called this principle an "ancient doctrine of both the common law and of our Constitution." One way in which this doctrine can be breached is through evidence which improperly reveals other criminal conduct or suggests the bad character of the defendant at the guilt stage of trial. One type of such evidence is testimony which links a defendant to organized criminal activity or to a group identified as a "gang" by the police.

In *Dawson v. Delaware*, 503 U.S. 159, 112 S.Ct. 1093, 117 L.Ed.2d 309 (1992), the Supreme Court held that evidence showing that Dawson was a member of a prison gang affiliated with the Aryan Brotherhood was not relevant to sentencing, *Dawson* distinguished cases such as *Barclay v. Florida*, 463 U.S. 939,103 S.Ct.3418,77 L.Ed.2d 1134 (1983), where the crime was a racially-motivated murder. In the wake of *Dawson*, this Court has approved of introducing gang-affiliation evidence in some cases. In *Fuller v. State*, 829 S.W.2d 191 (Tex.

Crim. App. 1992), the Court appeared to approve a three-part relevancy test for admission of such evidence, derived from *United States v. Lemon*, 723 F.2d 922,941 (D.C. Cir. 1983), although *Fuller* is a little murky in that respect because the issue in *Fuller* ultimately was decided on the basis of procedural default. Under the *Lemon* test, evidence of group affiliation is not to be admitted at the punishment stage unless it establishes that (1) the defendant is a member of the group, (2) the group's aims are illegal, and (3) the defendant intended to further those illegal aims. *Fuller, supra; Lemon, supra. See also Anderson v. State*, 901 S.W.2d 946 (Tex. Crim. App. 1995). It has never been suggested by this Court that proof of the *Lemon* factors would be sufficient to justify admission of gang affiliation evidence at the guilt stage of trial.

As with other evidence, a witness could step over the line and introduce the fact of gang affiliation. As with other improper, an objection is required, and if it is sustained, then the trial court judge should be requested to give an instruction that the jury must disregard the improper testimony. Once that is done, the question becomes whether a requested mistrial also should be granted. That issue is the basis for this point of error.

The Court of Appeals accurately summarized the general rule in this area, stating:

> Generally, any error resulting from improper testimony is cured by an instruction to disregard the same except in extreme cases where it appears that the evidence is clearly calculated to inflame the minds of

the jury and is of such a character as to suggest the impossibility of withdrawing the impression produced on their minds. *McKay v. State*, 707 S.W.2d 23, 36 (Tex. Crim. App. 1985). In most instances, an instruction to disregard the remark will cure the error. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). "Only offensive or flagrant error warrants reversal when there has been an instruction to disregard . . . ." *Id.* at 116.

The question is whether that general rule should apply.

## B. The Improper Revelation

Coleman was tracked down through information about a vehicle which was used in his escape. Houston Police Detective S. Spivey testified that a photo of Coleman's picture was in a "gang tracker" database used by the Houston Police (RR IV-31-32). Spivey mentioned discovering "all the evidence"in that review, but, as the Court of Appeals observed, without explaining what that meant (Mem. Opin., p. 8).

Defense counsel promptly objected. The objection was sustained, and a perfunctory instruction to ignore the evidence was given, but the request by Coleman's counsel for a mistrial was denied (RR IV- 34-35).

## C. The Inadequacy of an Instruction

It is useful to begin by recognizing the obvious: Anyone on the jury would infer that Coleman's picture was in that police database because the police had some reason to think that Coleman was a member of a criminal gang or otherwise was affiliated with a gang. Spivey's vagueness about the "evidence" derived from the "gang tracker" hardly mattered.

12

The Court of Appeals held that the instruction adequately cured the harm. The Court of Appeals "presume[d] that the jury followed the trial court's instruction to disregard." Should that presumption apply, however, when the concept of "guilt by association" is implied? That concept is inimical to one of the most basic tenets of the law, as discussed in Part A, *supra*. The Court of Appeals cited a pair of intermediate appellate opinions finding no harm in a witness' allusion to a gang, but no petitions for discretionary review were filed in those cases (Mem. Opin., pp. 9-10). The very fact that this problem continues to arise, in diverse courts around the State, suggests that it is time for this Court to provide guidance. The mere spectre of a mistrial or reversal does not seem to be an effective deterrent.

The Court of Appeals noted that the officer's testimony "was immediately cut off by the defense counsel" (Mem. Opin., p. 9). After that, it was not mentioned again. *Id.* Thank goodness for that, but the sound of one firecracker can be loud enough. The Court of Appeals also pointed out that "Officer Spivey did not provide any detail as to which gang Coleman was affiliated with nor did she expand on any information surrounding the gang tracker database" (Mem. Opin., p. 9). It is impossible to know, however, if the lack of clarification helped or hurt, once the horse was out of the barn. Say "Gang" and most people will think of the Cosa Nostra, the Crips or Bloods, MS-13, or the kind of motorcycle gangs which were involved in the recent Waco incident. The only thing the jurors would know

13

for sure was that this "gang," whatever its size, principles, or activities, was involved in enough bad things to justify being monitored by the police. The Court of Appeals said that Spivey's particular statement was not "flagrant" or "offensive," but that misses the point: criminal gangs are inherently offensive to jurors, and the risk of tainting the guilt-stage deliberations is genuine and substantial.

It is true that there have been many cases, spanning decades, which have relied upon the adequacy of a curative instruction when extraneous misconduct is dredged up by a witness. *See Allen v. State*, 513 S.W.2d 556 (Tex. Crim. App. 1974) and cases cited therein. In most of those cases, however, the evidence concerned a defendant's own conduct or reputation, and the nature of the extraneous misconduct was clear enough that a jury would not be invited to speculate about "what else" a defendant might have done. Once evidence of gang affiliation appears, however, the jurors' imaginations can run wild. It may well be futile, or even counterproductive, to tell jurors to "pay no attention to that gang of men behind the curtain."

## PRAYER FOR RELIEF

Wherefore Coleman prays that discretionary review be granted as to both questions.

Respectfully submitted,

/s/ Danny K. Easterling
**Danny K. Easterling**
Easterling & Easterling, PC
Texas Bar No. 06362100
1018 Preston, 6th Floor
Houston, TX 77002
(713)228-4441
E-mail: eaepc@swbell.net

Counsel for Appellant,
Court-appointed on appeal.

## CERTIFICATE OF COMPLIANCE

I certify that this petition was prepared using Wordperfect with fourteen-point font, and twelve-point font for footnotes, in Times New Roman typeface. Omitting the portions not included for the word limit, this petition contains 3100 words.

/s/ Danny K. Easterling
Danny K. Easterling

15

# CERTIFICATE OF SERVICE

I certify that a copy of this petition has been served on counsel for the State

at the following addresses on this the 17th day of June, 2015:

Harris County District Attorney's Office
Appellate Division
Attention: Melissa Hervey
1201 Franklin, Suite 600
Houston, TX 77002

Lisa McMinn
State Prosecuting Attorney
P.O. Box 12405
Austin, TX 78711


/s/ Danny K. Easterling
Danny K. Easterling



In The

# Fourteenth Court of Appeals

---

## NO. 14-13-00921-CR

---

## MARQUE JAMAL COLEMAN, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the 174th District Court
Harris County, Texas
Trial Court Cause No. 1347307**

---

## MEMORANDUM OPINION

Following a jury trial, appellant Marque Jamal Coleman was found guilty of the second degree felony offense of robbery. Coleman pleaded true to two enhancements and the trial court assessed punishment at thirty years' imprisonment. In this appeal, Coleman contends that the trial court erred in not submitting the lesser included offense of theft from a person in the jury charge and by not granting a mistrial after a police officer stated that Coleman's photo was

taken from a "gang tracker" database. We affirm.

On April 28, 2012, at approximately 1:45 a.m., Hortensia Garza was leaving HEB where she worked as a night stocker. Garza arrived home to her apartment complex located at 9550 Long Point Road, Houston, Texas. Garza parked her car, grabbed her items, and began walking toward her apartment. When Garza was about five feet away from her apartment, she saw a man walking in her direction. Garza believed that the man was a resident of the apartment complex so she smiled at him. As the man passed by Garza's left side, he grabbed her backpack from her shoulder. Garza and the man fought over the backpack for approximately thirty seconds until the man shoved Garza in the face with the palm of his hand. Garza fell to the ground, hit her head, and broke her finger. The man grabbed the backpack, ran, and jumped into a vehicle. Garza's backpack contained her wallet, driver's license, debit card, flex-pay card, and headphones.

Garza screamed throughout the duration of the struggle and a security guard appeared. By the time the security guard arrived, the man had taken off in the vehicle. Garza saw the vehicle attempt to exit the apartment complex, but the gate was locked. Officer Brian Foley arrived at the scene at 2:11 a.m. and interviewed Garza and the security guard. Garza described the man as a black male, between the ages of twenty and twenty-five, with a short black afro. Garza also stated that the man was wearing a black shirt and red shorts. A green GMC Yukon was discovered at another area of the apartment complex. The Yukon had crashed into a corner apartment and had been abandoned. The Yukon was towed to the police storage lot.

On April 30, 2012, the case was assigned to Officer Spivey. Officer Spivey ran the license plate from the Yukon discovered at the scene and found that it was

2

registered to Almador Juanes. At the time, Juanes was already contacting the police in order to obtain his vehicle from the tow lot. Officer Spivey spoke to Juanes and learned that on the night of the incident, Juanes loaned his vehicle to his friend, Blanca Diaz. Based on this conversation, Officer Spivey also discovered that a man named "Que" was with Diaz when Juanes loaned her the vehicle. Officer Spivey then ran a check on Diaz to see who she was associated with or whether she had a boyfriend and found Coleman's name.

Officer Spivey developed a photo spread, using Coleman's photo from a database along with five other black males' photos. Officer Spivey contacted Garza and drove to her family member's home, where she was residing at the time. When Officer Spivey showed Garza the photo spread, she said "that is him" within seconds and became very emotional. Garza selected Coleman's photo from the spread and identified him as the man who robbed her. Garza became upset and repeatedly told Officer Spivey "that is him." At trial, Garza testified that when Coleman was two feet away from her, she clearly saw his face. Garza stated that when she identified Coleman from the photo spread, she was 100 percent sure it was him and that there was no doubt in her mind. Garza further testified that it was easy to identify him.

Officer Spivey showed the same photo spread to Juanes, who identified Coleman as the man he knew as "Que." Juanes also identified Coleman as the person he saw in the passenger side of his vehicle with Diaz the night he loaned his Yukon to her.

On May 17, 2012, Coleman was indicted for the second degree felony offense of robbery, enhanced by two prior felony convictions. Tex. Penal Code § 29.02(a)(1); *Id.* § 29.02(b). The jury found Coleman guilty as charged in the indictment. At the punishment stage, Coleman pleaded true to both of the State's

punishment enhancement allegations. On September 25, 2013, the trial court found the enhancement allegations to be true and sentenced Coleman to thirty years' imprisonment. Coleman filed a motion for new trial on October 11, 2013, which was overruled by operation of law.

ISSUES AND ANALYSIS

On appeal, Coleman contends that the trial court erred in refusing his requested jury instruction on the lesser included offense of theft from a person. Coleman also asserts that the trial court erred in denying his motion for mistrial when Officer Spivey testified that she retrieved Coleman's photo from a gang tracker database.

## I.  Lesser Included Offense

In his first issue, Coleman argues that the trial court erred in failing to charge the jury on the lesser included offense of theft from a person.

We apply a two-prong test when determining whether a defendant is entitled to an instruction on a lesser included offense. *State v. Meru*, 414 S.W.3d 159, 162 (Tex. Crim. App. 2013); *see also Rousseau v. State*, 855 S.W.2d 666, 672–73 (Tex. Crim. App. 1993); *Royster v. State*, 622 S.W.2d 442, 446 (Tex. Crim. App. 1981) (op. on reh'g). We first consider whether the offense contained in the requested instruction is a lesser included offense of the charged offense. *Goad v. State*, 354 S.W.3d 443, 446 (Tex. Crim. App. 2011). If so, we must decide whether the admitted evidence supports the instruction. *Id.*

The State concedes that in this case, theft from a person can be a lesser included offense of robbery. *See Earls v. State*, 707 S.W.2d 82, 84–85 (Tex. Crim. App. 1986) ("Theft, by whatever method committed, is necessarily included in the alleged elements of the greater offense of robbery, when, as in the instant case, the

4

indictment alleged 'in the course of committing theft.'"). Thus, we need only address the second prong in our analysis to determine whether the admitted evidence supports the instruction.

The evidence supports an instruction on a lesser included offense if it permits a rational jury to find the defendant guilty only of the lesser included offense. *Goad*, 354 S.W.3d at 446. There must be some evidence directly germane to the lesser included offense for the factfinder to consider before an instruction on the lesser included offense is warranted. *Id.* We review all of the evidence presented at trial in making this determination. *Id.* The evidence must establish that the lesser included offense is a valid, rational alternative to the charged offense. *See Segundo v. State*, 270 S.W.3d 79, 91 (Tex. Crim. App. 2008). Anything more than a scintilla of evidence is sufficient to entitle a defendant to the lesser included offense instruction.[1] *See Goad*, 354 S.W.3d at 446. In making this determination, we may not consider "[t]he credibility of the evidence and whether it conflicts with other evidence or is controverted." *Id.* at 446–47 (quoting *Banda v. State*, 890 S.W.2d 42, 60 (Tex. Crim. App. 1994)).

The offense of robbery requires proof that a defendant intentionally, knowingly, or recklessly caused bodily injury to another. Tex. Penal Code § 29.02(a)(1). The offense of theft from a person does not require proof of this element. *See* Tex. Penal Code § 31.03(a) (providing that a person commits theft "if he unlawfully appropriates property with intent to deprive the owner of property").

---

[1] The test for determining whether evidence is legally sufficient and the test for determining whether to submit a lesser included offense jury instruction are "quite different." *Dixon v. State*, 358 S.W.3d 250, 257 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (quoting *Wasylina v. State*, 275 S.W.3d 908, 909 (Tex. Crim. App. 2009)). The evidence could easily be legally sufficient to support a conviction for a lesser included offense but not justify the submission of a lesser included offense instruction because the evidence does not show that the defendant is guilty only of the lesser included offense. *Id.* at 258.

To be entitled to a reversal, Coleman must show some evidence in the record that would have permitted a rational jury in his case to find that he was guilty only of theft from a person.

Coleman argues that he was entitled to a jury instruction on the lesser included offense of theft from a person because there was some evidence in the record that he shoved Garza in the face without "intentionally, knowingly, or recklessly" causing her bodily injury. *See* Tex. Penal Code § 29.02(a)(1). Specifically, Coleman argues that there is evidence in the record that (1) Garza fell because of her size and weight; (2) he intended it to be a quick theft; and (3) he pushed her instead of using a fighting tactic.

The evidence of how the offense occurred came from the testimony of Garza, who testified that Coleman shoved her face with his palm in an attempt to steal the backpack when they were struggling over it. Garza testified that the shove caused her to fall to the ground, where Garza fell on her head and broke her finger.

Coleman directs this court to Garza's testimony in which she "attributed the result of falling to the ground to the fact she was short and had 'some weight on me.'" Coleman alleges that he did not intend to break Garza's finger or force her to fall because her testimony reflected that she fell because of her height and weight, rather than his forceful shove. However, there is no evidence that Garza attributed her fall to anything other than Coleman shoving her backwards. At trial Garza actually stated, "I am short, but I got some weight on me. In order to knock me down, you have to push me hard." Garza's testimony reflected that she fell to the ground and broke her finger because Coleman shoved her in the face with his palm in order to retrieve the backpack. Garza's testimony only speaks to causation, not

6

Coleman's mental state as to whether he intended to cause Garza bodily injury.[2]

Coleman further asserts that he did not intend to cause Garza bodily injury because he intended for it to be a quick theft which was evidenced by how quickly he fled the scene on foot. Coleman also argues that he did not act with the requisite mens rea because he pushed her in the face, instead of using a "'piledriver' blow or a leg-tipping maneuver, such as a fighting tactic."

Coleman's evidence does not provide any evidence that would permit a rational jury to believe he committed the robbery without intentionally, knowingly, or recklessly causing Garza bodily injury. *See Nguyen v. State*, No. 14-11-00706-CR, 2012 WL 3043063, at *3 (Tex. App.—Houston [14th Dist.] July 26, 2012, pet. ref'd) (mem. op.) (not designated for publication) (holding that defendant was not entitled to a lesser included offense instruction because the evidence showed that he acted intentionally, despite claiming that "he never intended to harm the complainant"). Therefore, the evidence does not support the conclusion that if Coleman is guilty, he is guilty of only theft from a person.

Because there is no evidence in the record that would permit a jury rationally to find that if he is guilty, he is guilty only of the lesser included offense of theft from a person, the trial court did not err in denying Coleman's requested lesser included offense instruction.

We overrule Coleman's first issue regarding the lesser included offense.

## II. Motion for Mistrial

In his second issue, Coleman contends that the trial court erred in denying his motion for mistrial after Officer Spivey stated that Coleman's photo was taken

---

[2] Coleman does not dispute causation and admits that "[i]f the only question was causation, then it fairly could be said the Coleman's action caused the broken finger, which is a 'bodily injury.'"

from a gang tracker database.

While on redirect, the prosecutor asked Officer Spivey what evidence, other than the witness's identification, she used in order to make a final determination. In response, Officer Spivey stated, "[w]hen I found Que on the gang tractor [sic] system and it came back to Marque Coleman and such, just all the evidence." The defense counsel immediately objected to the comment and approached the bench. Outside the presence of the jury, defense counsel again objected. She asked the court to strike Officer Spivey's testimony, requested a jury instruction, and moved for a mistrial. The court sustained the objection, but denied the motion for a mistrial. When the jury was brought back into the courtroom, the judge immediately stated "[t]he jury is instructed to disregard that portion of the last answer."

The denial of a motion for mistrial is reviewed for abuse of discretion. *Trevino v. State*, 991 S.W.2d 849, 851 (Tex. Crim. App. 1999). We view the evidence in the light most favorable to the trial court's ruling, considering only those arguments before the court at the time of the ruling. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). A trial court does not abuse its discretion when its decision is within the zone of reasonable disagreement. *See id.*; *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g).

A mistrial is an appropriate remedy in "extreme circumstances" for a narrow class of highly prejudicial and incurable errors. *Ocon*, 284 S.W.3d at 884. A mistrial halts trial proceedings when the error is so prejudicial that expenditure of further time and expense would be wasteful and futile. *Id.* Whether an error requires a mistrial must be determined by the particular facts of the case. *Id.*

Generally, any error resulting from improper testimony is cured by an instruction to disregard the same except in extreme cases where it appears that the

8

evidence is clearly calculated to inflame the minds of the jury and is of such a character as to suggest the impossibility of withdrawing the impression produced on their minds. *McKay v. State*, 707 S.W.2d 23, 36 (Tex. Crim. App. 1985). In most instances, an instruction to disregard the remark will cure the error. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). "Only offensive or flagrant error warrants reversal when there has been an instruction to disregard . . . ." *Id.* at 116.

After Officer Spivey mentioned that Coleman's photo was taken from a gang tracker database, defense counsel immediately objected and asked to approach. The jury was removed from the courtroom and upon returning, the trial court sustained defense counsel's objection and promptly instructed the jury to disregard the remark. We presume that the jury followed the trial court's instruction to disregard. *Id.* Although Officer Spivey mentioned that the photo was taken from a gang tracker database, her testimony was immediately cut off by the defense counsel. Officer Spivey did not provide any detail as to which gang Coleman was affiliated with nor did she expand on any information surrounding the gang tracker database. After Officer Spivey's testimony, the gang tracker database was never mentioned again at trial.

We cannot say that Officer Spivey's statement was so offensive or flagrant as to warrant the drastic remedy of a mistrial. Further, the comment was not so offensive or flagrant that the trial court's instruction to the jury to disregard the statement was insufficient to cure any error. *See Bridgewater v. State*, 905 S.W.2d 349, 354 (Tex. App.—Fort Worth 1995, no pet.) (holding that any possible error from witness' statement of "[h]e's already said that I can't say the thing about gangs" was cured by trial court's instruction to disregard); *Villarreal v. State*, 821 S.W.2d 682, 686 (Tex. App.—San Antonio 1991, no pet.) (stating that the

9

prosecutor's mentioning of defendant being in a gang during the guilt/innocence phase of trial was cured by the court's instruction to disregard the statement). The trial court did not abuse its discretion in denying Coleman's motion for a mistrial.

We overrule Coleman's second issue regarding the motion for mistrial.

## CONCLUSION

We overrule both of Coleman's issues and affirm the judgment of the trial court.


/s/     Ken Wise
Justice


Panel consists of Justices McCally, Brown, and Wise.
Do Not Publish — TEX. R. APP. P. 47.2(b).



# JUDGMENT

# The Fourteenth Court of Appeals

MARQUE JAMAL COLEMAN, Appellant

NO. 14-13-00921-CR

V.

THE STATE OF TEXAS, Appellee

---

This cause was heard on the transcript of the record of the court below. Having considered the record, this Court holds that there was no error in the judgment. The Court orders the judgment **AFFIRMED.**

We further order this decision certified below for observance.